**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DR. JOSEPH F. KASPER,** Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:15-CV-00923-TJC (Consolidated) |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Todd J. Campbell Magistrate Judge John S. Bryant |
| **AAC HOLDINGS, INC., JERROD N. MENZ, MICHAEL T. CARTWRIGHT, ANDREW W. MCWILLIAMS, and KIRK R. MANZ,** | ) ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND FACTS ........................................................................................................3

III. ARGUMENT AND CITATION TO AUTHORITY ................................................................6

    A. Heightened Pleading Standards Govern a Motion to Dismiss in a Shareholder
       Securities Class Action. ...............................................................................................6

    B. The Amended Complaint Should be Dismissed Because it Fails to Plead an
       Actionable Misstatement or Omission. .........................................................................9

    C. The Amended Complaint Should Be Dismissed Because It Fails to Plead A
       Strong Inference of Scienter. .....................................................................................11

        1. The Amended Complaint's Allegations Viewed Holistically Fail to Allege a
           Strong Inference of Scienter. ...........................................................................13

        2. The Amended Complaint Fails to Plead Any of the *Helwig* Factors...........................15

        3. The Amended Complaint Should Be Dismissed Because the Competing, Non-
           Fraudulent Inferences Are More Compelling. ..................................................22

    D. The Section 20(a) Claim Should be Dismissed. .........................................................25

IV. CONCLUSION.....................................................................................................................25

# I.    INTRODUCTION

This case should be dismissed as a matter of law.  Plaintiff's suit is nothing more than an attempt to capitalize on AAC Holdings, Inc.'s ("AAC" or the "Company") stock price decline following the announcement that a California grand jury filed a second-degree murder indictment against three of AAC's subsidiaries[1] and Jerrod Menz[2] five years after the death of one of the subsidiary's clients.  The Amended Complaint[3] should be dismissed because (a) the California court has now dismissed the second-degree murder charges on which Plaintiff heavily relies and (b) there are no allegations giving rise to the inference that Defendants[4] should have known about the investigation, much less the charges.

The fact that the murder charges have been dismissed requires dismissal of the Amended Complaint because it negates any inference that Defendants should have known the death of one of their clients would result in murder charges.  The California court has now determined there was no basis for the charges in the first place, so Defendants could not have known about them.

Indeed, the Amended Complaint's allegations and the documents cited therein actually support the inference that Defendants had no reason to believe that an indictment would be filed or even that an investigation was pending at the start of the alleged class period.  As a threshold matter, the coroner at the time classified the patient death as natural.  Moreover, the investigation in 2013 on which Plaintiff focuses appears to have arisen from a relationship among a California Deputy Attorney General, a competitor, and a plaintiff's attorney representing the estate of the deceased patient in civil litigation against ABTTC, one of AAC's subsidiaries.  The Deputy

---

[1]    The three subsidiaries are American Addiction Centers, Inc. ("AAC, Inc."), Forterus Health Care Services, Inc., and ABTTC, Inc. ("ABTTC").  The corporate defendant in this case, AAC Holdings, Inc., was not in existence at the time of the patient death that is the subject of the indictment.
[2]    Jerrod Menz ("Menz") is a current employee and past President of the Company.
[3]    Consolidated Class Action Complaint ("Amended Complaint" or "AC").
[4]    "Defendants" are the Company, Michael T. Cartwright, Chairman and CEO of the Company, Menz, Kirk R. Manz, CFO of the Company, and Andrew W. McWilliams, CAO of the Company.

Attorney General's declaration cited in the Amended Complaint was submitted on behalf of the competitor in litigation between AAC, Inc. and the competitor. The competitor's principal had also been retained as an "expert" in the litigation the plaintiff's attorney filed against ABTTC.

On September 18, 2013, AAC brought all of these facts to California's Chief Deputy Attorney General's attention and questioned the propriety of the investigation. There are no facts alleged in the Amended Complaint that would give rise to the inference that the investigation continued after this September 2013 letter, which received no response. And, the underlying civil litigation brought by the plaintiff's attorney was settled in May 2014. Thus, when Defendants made representations about pending investigations and claims in October 2014, they had no reason to believe any investigation was pending.

The mere fact that AAC's stock declined after the announcement of the now-dismissed murder charges does not mean there has been securities fraud. Indeed, the Private Securities Litigation Reform Act of 1995 (the "Reform Act")[5] that governs this case was designed to curtail lawsuits that are often "based on nothing more than a company's announcement of bad news, not evidence of fraud."[6] To meet this goal, the Reform Act requires that complaints alleging claims under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[7] "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter," or an intent to defraud.[8] The Sixth Circuit recently described these pleading requirements as an "***elephant-sized boulder blocking [plaintiff's] suit***."[9] The Amended Complaint simply does not get past this boulder. It alleges neither the facts showing the statements made were false nor the

---

[5]   15 U.S.C. § 78u-4, *et seq.*
[6]   S. Rep. No. 104-98, at 4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679.
[7]   15 U.S.C. § 78j(b).
[8]   *Lynn v. Helf*, No. 03-12-1137, 2014 WL 5431221, at *11 (M.D. Tenn. Oct. 24, 2014).
[9]   *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014) (emphasis added).

facts evidencing scienter.

The Amended Complaint alleges that Defendants' statements that "we are currently not aware of any legal proceedings" and we are "not aware of any material or threatened investigations involving allegations of wrongdoing" are somehow actionable.[10]  But, as explained in more detail below, there are **no facts** alleged in the Amended Complaint supporting the conclusion (a) that an investigation was pending **at the time** Defendants made the statements regarding current legal proceedings and investigations or (b) that Defendants were aware of or reckless in not knowing that an investigation was pending **at the time** the alleged statements were made.  Where a complaint "is remarkably devoid of facts contemporaneous with the alleged misstatements that would indicate the statements' falsity," the Reform Act requires that the complaint be dismissed.[11]  The Amended Complaint should, accordingly, be dismissed.

## II.     BACKGROUND FACTS

AAC is based in Brentwood, Tennessee, and provides inpatient and outpatient substance abuse treatment services for individuals with drug and alcohol addiction.  AC ¶¶ 4, 32.  At the time AAC became a public company in October 2014, it operated six substance abuse treatment facilities located throughout the United States and employed 750 people.[12]  Each of AAC's facilities were accredited by the Commission on Accreditation of Rehabilitation Facilities, which is the primary accreditation body in the substance abuse treatment industry.[13]

The Amended Complaint arises out of a single incident at a facility operated by ABTTC

---

[10]     Amended Complaint ("AC"), ¶¶ 99, 101, 108, 111, 116.

[11]     *In re Century Bus. Servs. Sec. Litig.*, No. 1:99-cv-02200, 2002 WL 32254513, at *16 (N.D. Ohio June 27, 2002).

[12]     AAC Registration Statement dated October 2, 2014 at p. 1 (excerpts from the Registration Statement are attached hereto as Exhibit A).  *See Tellabs, Inc.v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

[13]     *Id.* at p. 101.

in Riverside County, California. AC ¶ 6. In July 2010, Gary Benefield was admitted to the facility and passed away the following day.[14] Mr. Benefield was a 53-year old with a history of heart disease. The Sheriff-Coroner's report revealed that the client died of hypertensive cardiovascular disease and chronic obstructive pulmonary disease.[15] The Sheriff-Coroner classified the death as "natural."[16] The client's family filed a civil lawsuit on July 26, 2011 (the "Benefield Litigation"). AC ¶ 70. In the Benefield Litigation, defendants in the case filed various papers with the court between March 18, 2013 and June 4, 2013, related to Fifth Amendment concerns in light of information regarding a suspected criminal investigation into the circumstances of Mr. Benefield's death. AC ¶¶ 71-76.

On August 29, 2013 – *more than a year before any alleged misstatements were made* – a Deputy Attorney General, Hardy Gold ("Gold"), submitted a declaration (the "Gold Declaration") in an unrelated defamation lawsuit brought by ABTTC against Rocky Hill ("Hill"), one of ABTTC's competitors. AC ¶ 7. In the Gold Declaration—submitted on behalf of ABTTC's competitor—Gold stated that the "criminal investigation of ABTTC in [sic] continuing *and nearing completion*. I anticipate that criminal charges will be filed." AC ¶ 7 (emphasis added).

In response to the Gold Declaration, on September 18, 2013 – *still more than a year before any alleged misstatements were made* – Mr. Menz's counsel wrote to the California

---

[14]  Mr. Benefield was one of four clients that have died at AAC's facilities between 2011 and August 20, 2015. *See* www.aacthetruth.com, a copy of which is attached hereto as Exhibit B. Because the Amended Complaint cites the website at ¶ 137, the Court may consider it on the motion to dismiss. *Omnicare*, 769 F.3d at 466. The Substance Abuse and Mental Health Services Administration (SAMHSA) examined 3.44 million substance abuse treatment client discharges during 2010 and 2011 and found that there was one death for every 422 client discharges. *Id.* From 2011 through August 20, 2015, AAC has discharged 17,008 clients from its treatment programs, and, thus, its rate is one death out of every 4,252 patient discharges – a rate that is ten times better than the industry average based on the SAMHSA study. *Id.*

[15]  *Id.*

[16]  *Id.*

Chief Deputy Attorney General.  AC ¶ 8.[17]  The letter explains the relationship between Gold, Hill, and Andrew Zucker ("Zucker"), the plaintiff's attorney in the Benefield Litigation, and provides that "[w]e vigorously contend that your office's investigation of my client(s) is seriously tainted, completely absent any modicum of objectivity and represents an egregious departure from legal ethical standards on the part of a Deputy Attorney General who is employed by a well respected government agency."  *See* Exhibit C hereto.

The Amended Complaint does not allege any response to the September 18, 2013 letter. It also does not allege any developments in or knowledge by Defendants of developments in the threatened investigation after the letter questioning the propriety of the investigation.  The Benefield Litigation settled eight months later in May 2014 for an undisclosed sum and with no admission of liability by AAC.[18]  Thus, despite the Company's inquiry about this purported investigation, there is no allegation that the Company ever received any confirmation from the government that an investigation was ongoing after the September 18, 2013 inquiry.

On October 2, 2014 – over a year after the last alleged contact with the California DOJ and about five months after the Benefield Litigation had settled – AAC filed its Registration Statement.  AC ¶ 9.  The Amended Complaint alleges that statements made in the Registration Statement and subsequent filings with the U.S. Securities and Exchange Commission ("SEC") between November 12, 2014 and May 5, 2015 were somehow misleading.  AC ¶¶ 98-119.  The statements on which the Amended Complaint attempts to state a claim are: (1) "we are currently not aware of any legal proceedings" and (2) we are "not aware of any material pending or

---

[17]  The Amended Complaint cites to the September 18, 2013 letter, but includes only Plaintiff's characterization of the letter.  AC ¶ 8.  The full text of the letter is attached as Exhibit C hereto.  It is proper for the Court to consider the full text of the letter.  "[I]f a plaintiff references or quotes certain documents or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss."  *Omnicare*, 769 F.3d at 466.

[18]  Ex. B; AC ¶ 70.

threatened investigations involving allegations of wrongdoing." AC ¶¶ 99, 101, 108, 111, 116.

As explained below, the Amended Complaint fails to allege any facts that these statements were either false when made or that Defendants had knowledge or were reckless in not knowing that they were false when made. Indeed, the Amended Complaint rests entirely on the *subsequent* July 29, 2015 disclosure that the California grand jury had indicted subsidiaries of AAC and certain of its current and former employees (the "Indictment"). AC ¶ 124. As is typical with grand jury proceedings, the proceedings were under seal until that date and the Company disclosed the Indictment immediately upon its unsealing. Further, there is no corresponding allegation that any Defendant knew about the grand jury proceedings or the Indictment at the time the alleged misstatements were made between October 2, 2014 and May 5, 2015. Defendants in the California Department of Justice case filed motions to dismiss the charges, and the court dismissed the second-degree murder charges on March 18, 2016.[19] As the court held, "insufficient evidence was presented to the grand jury to establish the elements of murder to the standard of probable cause."[20]

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Heightened Pleading Standards Govern a Motion to Dismiss in a Shareholder Securities Class Action.

A motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted. A complaint only survives dismissal if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[19] *See People v. McCausland, et al.*, No. SWF1501351 (Mar. 18, 2016) (Ruling Re: Penal Code Section 995 Motion), attached hereto as Exhibit D. The Court may take judicial notice of the contents of filings from other proceedings. *See McGehee v. U.S. Army Corps of Eng'rs*, 508 F. App'x 368, 370 (6th Cir. 2012); *Brown v. Matauszak*, 415 F. App'x 608, 614 n. 7 (6th Cir. 2011); *Lee v. Dell Prods., L.P.*, 236 F.R.D. 358, 361 (M.D. Tenn. 2006).

[20] *Id.*

*Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts as true well-pleaded facts alleged in the complaint, but the Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (citations omitted).

Here, because the Amended Complaint alleges claims under §§ 10(b) and 20(a) of the Exchange Act, the case is governed by the Reform Act. By enacting the Reform Act, Congress designated district courts as gatekeepers to prevent actions that do not meet the Reform Act's heightened pleading requirements from proceeding to discovery and beyond. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007); *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 713 (E.D. Va. 2003).

Securities litigation is especially prone to "strike suits" aimed at "jackpot discovery and predatory settlement." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 547 (6th Cir. 2001). Such abusive lawsuits are often "based on nothing more than a company's announcement of bad news, not evidence of fraud." S. Rep. No. 104-98, at 4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 683. Congress enacted the Reform Act to "curb frivolous securities fraud litigation, which unnecessarily increase[s] the cost of raising capital and chill[s] corporate disclosure . . . ." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). The Reform Act's mandatory stay of discovery and heightened pleading standards, discussed in greater detail below, reflect the objective of Congress to "provide a filter at the earliest stage . . . to screen out lawsuits that have no factual basis." *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 691-92 (6th Cir. 2003).

Thus, in suits like this one brought under the federal securities laws, district courts

properly and routinely dismiss complaints at the motion to dismiss stage, and the Sixth Circuit affirms those dismissals. *See, e.g., Omnicare*, 769 F.3d at 484; *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 493 (6th Cir. 2015); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014); *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 502 (6th Cir. 2013); *Darby v. Century Bus. Servs., Inc.*, 96 F. App'x 277, 287 (6th Cir. 2004); *Miller*, 346 F.3d at 692; *Comshare*, 183 F.3d at 554.

The basic elements of a claim under § 10(b) and Rule 10b-5 are (1) a misstatement or omission of material fact, (2) made with scienter (or intent), (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff reasonably relied, (5) that caused an economic loss, and (6) where a causal connection between the material misrepresentation and the loss exists. *See Burges v. BancorpSouth, Inc.*, No. 3-14-1564, 2015 WL 4198795, at *2 (M.D. Tenn. July 10, 2015). The failure to plead ***any one of the elements*** of a § 10(b) claim is sufficient grounds for dismissal. *See Lubbers v. Flagstar Bancorp. Inc.*, No. 14-CV-13459, 2016 WL 520944, at *10 (E.D. Mich. Feb. 10, 2016) (dismissing complaint because "plaintiff cannot satisfy the first element of his § 10(b) and Rule 10b-5 claim"); *Gold v. Ford Motor Co.*, 852 F. Supp. 2d 535, 541 n. 3 (D. Del. 2012), *aff'd* 577 F. App'x 120 (3d Cir. 2014) (failure to plead a single element of a § 10(b) claim is sufficient grounds for dismissal).

In addition to pleading the essential elements of the claim, the Amended Complaint must meet the "additional and more exacting pleading requirements" imposed by the Reform Act. *Lynn*, 2014 WL 5431221, at *11. The Reform Act requires that a private securities complaint must "(1) specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . and (2) state with particularity facts giving rise to a 'strong inference' that the defendant acted with the required state of mind." *Id.* In short, the Reform Act

requires "plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter . . . ." *Id.* If either of these requirements are not met, the court "shall, on the motion of any defendant, dismiss the complaint . . . ." 15 U.S.C. § 78u-4(b)(3)(A).

Here, the Amended Complaint should be dismissed with prejudice because it fails to plead either an actionable misstatement or omission, *see infra* at pp. 9-11; or a strong inference of scienter, *see infra* at pp. 11-25, in accordance with the Reform Act's heightened pleading requirements.

### B. The Amended Complaint Should be Dismissed Because it Fails to Plead an Actionable Misstatement or Omission.

The Amended Complaint alleges that the statements "we are currently not aware of any legal proceedings" and we are "not aware of any material or threatened investigations involving allegations of wrongdoing," which were made on October 2, 2014, November 12, 2014, and May 5, 2015, are misleading. AC ¶¶ 99, 101, 108, 111, 116. The Amended Complaint contends these statements were misleading because (a) ***more than a year before*** the statements were first made, Defendants were aware of a threatened investigation and (b) ***nearly nine months after*** the statements were first made, the California DOJ filed the Indictment. AC ¶¶ 102, 124.[21]

The Amended Complaint is plainly deficient under the Reform Act. "A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false ***at the time it was made***." *Lipow v. Net1 UEPS Techs., Inc.*, No. 13 Civ. 9100(ER), 2015 WL 5459730, *18 (S.D.N.Y. Sept. 16, 2015) (emphasis in original). The

---

[21] There is no independent duty to disclose a government investigation. *See In re Lions Gate Entm't Corp. Sec. Litig.*, No. 14-cv-5197, 2016 WL 297722, at *13 (S.D.N.Y. Jan. 22, 2016). In *Lions Gate*, the court dismissed a complaint alleging a failure to disclose the existence of an SEC investigation where the company did not disclose the investigation until an administrative proceeding was filed, which was more than three years after the company was first contacted by the SEC, years after the company had been issued subpoenas and a Wells notice by the SEC, and a month after the company had reached a settlement with the SEC. *Id.* at *4-5.

Reform Act's "falsity pleading requirement requires particularity, … and cannot be satisfied with allegations that defendants made statements 'and then showing in hindsight that the statement is false.'" *Elam v. Neidorff*, 544 F.3d 921, 927 (8th Cir. 2008). "In other words, plaintiffs must demonstrate a basis for the claim that the defendants' statements were false at the time they were made, rather than merely erroneous in hindsight." *In re Century Bus. Servs. Sec. Litig.*, No. 1:99cv02200, 2002 WL 32254513, *15 (N.D. Ohio June 27, 2002).

Where the complaint "is remarkably devoid of facts contemporaneous with the alleged misstatements that would indicate the statements' falsity," the complaint should be dismissed for failing to "plead falsity with the requisite particularity." *Id.* at *16. ***Here, the Amended Complaint pleads zero facts contemporaneous with the alleged misstatements that would indicate the statements' falsity***. It rests entirely on allegations relating to events that occurred more than a year ***before*** the Company's statements were first made and events occurring nine months ***after*** the statements were first made.

To be clear, the allegations related to events occurring long before the statements were made do not support an inference that an investigation was pending ***at the time*** the Company's statements were made. The August 29, 2013 Gold Declaration asserted that the investigation was "nearing completion," (AC ¶ 7), but no charges had been filed ***over a year later*** when AAC filed its Registration Statement, which was ***over four years*** after the underlying incident. The only reasonable inference to be drawn from these allegations is that the investigation had been completed and the California DOJ had determined there was no basis upon which to file any charges. Indeed, counsel for Mr. Menz questioned the propriety of the Gold Declaration and the threatened investigation on September 18, 2013, and requested additional information regarding the purported investigation. Importantly, no response was received, and the Amended Complaint

does not allege any activity in the threatened investigation after that point. Again, the only reasonable inference to be made is that the California DOJ decided not to proceed with the investigation. In addition to the fact that there was no response to the September 18, 2013 letter questioning the propriety of the investigation, the Benefield Litigation settled in May 2014, which provided Defendants another reason to believe that any investigation arising out of Mr. Benefield's death had concluded by the time the Registration Statement was filed on October 2, 2014. There simply are no facts alleged demonstrating that the statements were false *at the time they were made*.

The fact that the Indictment was ultimately filed *after the statements were made* likewise does not demonstrate that the statements were false at the time they were made. "Grand juries operate in secret. Government investigations do not typically advise their targets of the likelihood of indictment." *Ballan v. Wilfred Am. Educ. Corp.*, 720 F. Supp. 241, 248 (E.D.N.Y. 1989). As noted above, the grand jury proceedings were under seal. Moreover, the fact of the July 2015 Indictment "provide[s] little indication that any earlier statements" made October 2, 2014 through May 5, 2015 "were fraudulent, rather than merely erroneous." *Century Bus. Servs.*, 2002 WL 32254513, *16.

The Amended Complaint should be dismissed for failure to allege with particularity that any statements Defendants made were false *at the time they were made*. *Id.* [22]

### C. The Amended Complaint Should Be Dismissed Because It Fails to Plead A Strong Inference of Scienter.

The Amended Complaint should be dismissed for the separate and additional reason that

---

[22] The Amended Complaint also alleges that the risk factors in AAC's SEC filings and the Sarbanes-Oxley certifications are misleading because they fail to disclose the California DOJ Investigation. AC ¶¶ 103-105, 114-115, 118-119. Those statements are not actionable for the same reason that the statements about pending legal proceedings and investigations are not actionable – the Amended Complaint fails to plead any facts that the California DOJ Investigation was pending at the time the statements were made.

it fails to allege any facts that give rise to the requisite strong inference that any Defendant made any alleged misstatement with an intent to defraud.

The Reform Act requires that "the complaint shall, with respect to each act or omission alleged . . . , *state with particularity facts giving rise to a strong inference* that the defendant acted with the required state of mind."[23] 15 U.S.C. §78u-4(b)(2) (emphasis added). As the Supreme Court held, the Reform Act's "strong inference" standard "unequivocally raise[d] the bar for pleading scienter." *Tellabs*, 551 U.S. at 321. *Tellabs* also sets forth the proper test for determining whether a "strong inference" of scienter has been pled. "To qualify as 'strong,' . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and *at least as compelling as any opposing inference of nonfraudulent intent*." *Id.* at 314. This inquiry requires the court to "consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324; *see also Blitz v. AgFeed Indus., Inc.*, No. 3-11-0992, 2014 WL 4792917, at *7 (M.D. Tenn. Sept. 25, 2014).

The Supreme Court has established a three-part test for analyzing the sufficiency of scienter allegations. First, the court must accept all well-pleaded factual allegations in the complaint as true. Second, the court must consider the complaint in its entirety and decide whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter. Third, assuming that the complaint's allegations create a powerful or cogent inference of scienter, the court must compare this inference with other competing possibilities, allowing the complaint to go forward only if a reasonable person would deem the inference of scienter cogent

---

[23] The requisite state of mind is scienter, defined as a "knowing and deliberate intent to manipulate, deceive, or defraud." *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008). Recklessness may also constitute the requisite state of mind, but the bar for recklessness is similarly demanding. Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004).

12

and at least as compelling as any opposing inference one could draw from the facts alleged. *See Tellabs*, 551 U.S. at 322-24; *Omnicare*, 769 F.3d at 473; *Lynn*, 2014 WL 5431221, at *11-12.

In considering whether the facts alleged give rise to a strong inference of scienter, courts in the Sixth Circuit look both to (a) "the complaint's allegations 'holistically'" (*Ricker*, 534 F. App'x at 499); and (b) the nine factors set forth in *Helwig*, 251 F.3d 540. As explained below, under either standard, the Amended Complaint fails to allege a strong inference of scienter. And, even if it did, any inference of scienter is not as compelling as the opposing, non-fraudulent inference that must be drawn from the facts alleged.

### 1. The Amended Complaint's Allegations Viewed Holistically Fail to Allege a Strong Inference of Scienter.

The Amended Complaint rests entirely on the flawed theory that the alleged statements are misleading because there was a pending investigation into the circumstances of Mr. Benefield's death at the time the statements were made. As discussed above, the Amended Complaint fails to allege facts indicating that the investigation was pending at the time the alleged misstatements were made. And, when viewed holistically, there are absolutely no allegations that any of the Defendants was aware that the statements were misleading at the time they were made.

> Under the [Reform Act], it is not enough to simply state that a misstatement or omission occurred, and infer in hindsight that it was done with bad intent. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2009). Rather, Plaintiff must separately plead facts with particularity, showing that a defendant knew or recklessly ignored that its statements **were false or misleading at the time they were made**. *See id.*

*May v. Apricus Biosciences, Inc.*, No. 3:13-cv-00554, 2014 WL 4897938, at *8 (M.D. Tenn. Sept. 20, 2014).

The first alleged misstatements were made on October 2, 2014. AC ¶ 99. Plaintiff

alleges that the October 2, 2014 statements that Defendants were not aware of any legal proceedings or any material or threatened investigations involving allegations of wrongdoing were misleading because (1) Defendants were aware of the California DOJ investigation and (2) the California DOJ anticipated that criminal charges would be filed. AC ¶¶ 99-102.

But the Amended Complaint does not allege any facts giving rise to the inference that Defendants were aware of any pending investigation or legal proceeding as of October 2, 2014, when the alleged misstatements were made. The Amended Complaint does allege in conclusory fashion that "at the time [the statements] were made, the Insider Defendants either knew or deliberately disregarded that the California DOJ was investigating Defendant Menz, the AAC Affiliates and other AAC employees." AC ¶ 102. But "conclusory allegations" of contemporaneous knowledge do not pass muster under the Reform Act. *Comshare*, 183 F.3d at 553. Rather, the Amended Complaint must "***plead facts with particularity***" showing each Defendant's knowledge that the statements were misleading at the time they were made. *May*, 2014 WL 4897938, at *8.

There are no such facts alleged. The latest alleged occurrence in which Defendants were allegedly made aware of a threatened investigation is the August 29, 2013 Gold Declaration, in which Gold stated, "the criminal investigation … is continuing and ***nearing completion***. I anticipate that criminal charges will be filed." AC ¶ 7 (emphasis added). In response to the Gold Declaration, counsel for an AAC subsidiary and Mr. Menz wrote to the California Deputy Attorney General on September 18, 2013, questioning the investigation and Gold's ethics. *See* Exhibit C hereto. The Amended Complaint does not and cannot allege that the California DOJ ever responded to the letter or that there was ever any indication by the California DOJ that the investigation continued after the ethics of the investigation had been questioned. There certainly

are no allegations that Defendants were aware of any investigation pending as of October 2, 2014, when Defendants made the first alleged misstatements, much less any allegations that Defendants had or could have had any knowledge of what charges might be filed against whom. And, in fact, the allegations support the inference that Defendants *were not aware* of a pending investigation. There had been no activity in the investigation since September 18, 2013 – more than one year before the alleged misstatement – and inquiries at that time regarding the propriety and status of the investigation had gone unanswered.

Moreover, the Amended Complaint cannot allege a strong inference of scienter by the mere fact that an indictment was ultimately filed on July 21, 2015. AC ¶ 19. As the Sixth Circuit has held, "[w]hile [the Company] may have ultimately been mistaken about [the government's position], there are no facts suggesting the company knew this at the time its representatives spoke. … Therefore, the district court properly dismissed the plaintiff's complaint." *Kuyat*, 747 F.3d at 442-444.

## 2. The Amended Complaint Fails to Plead Any of the *Helwig* Factors.

Not only does the Amended Complaint fail to plead a strong inference of scienter when the allegations are viewed holistically, but it also fails to plead facts in support of any of the nine factors that the Sixth Circuit enumerated in *Helwig* as being "usually relevant to scienter." 251 F.3d at 552. "The more of these factors that are present, the stronger the inference that the defendant made his statement with the requisite state of mind." *Omnicare*, 769 F.3d at 473. And, as one court in the Sixth Circuit held, while "the *Helwig* factors are non-exhaustive . . . *the absence of these factors indicates the absence of scienter*." *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006) (emphasis added). *Here, the Amended Complaint fails to allege <u>any</u> of these nine factors.*

*Factor No. 1*: "insider trading at a suspicious time or in an unusual amount." *Helwig*, 251 F.3d at 552. The Amended Complaint attempts to meet this factor with the allegation that Defendants Menz and Cartwright, who collectively own 50% of AAC, sold a portion of their shares in the IPO. AC ¶¶ 81-82. This allegation fails for at least five reasons.

First, as the Amended Complaint must admit, Defendants Menz and Cartwright did not have control over this sale. On October 7, 2014, "the underwriters exercised the over-allotment option," "causing" Defendants Menz and Cartwright to sell 250,000 shares each. AC ¶ 82. In other words, neither Menz nor Cartwright had control over the sale. Courts have routinely held that in situations where the defendant did not actually have control over the sale at issue, such as in the case of a forced sale to meet a margin call or a 10b5-1 automatic trading plan, the sale does not support an inference of scienter. *See, e.g.*, *In re Level 3 Commc'ns Inc. Sec. Litig.*, 667 F.3d 1331, 1346-47 (10th Cir. 2012) (sales made pursuant to automatic transactions rebut an inference of scienter that might otherwise be drawn from those sales); *Elam*, 544 F.3d at 928 (sales pursuant to Rule 10b5-1 trading plans can raise an inference that the sales were not suspicious); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1337 (S.D. Fla. 2004) (forced sale to meet a margin call did not support inference of scienter because defendant had no control over timing or circumstances of the sale).

Second, although the Amended Complaint points to the raw number of shares sold and the dollar amount of proceeds, the Amended Complaint fails to allege any context for these transactions. It is well-established that insider sales can support a strong inference of scienter only where the stock sales are unusual in amount or timing. *See In re Nat'l Auto Credit, Inc. Sec. Litig.*, No. 1:98-cv-0264, 1999 WL 33919791, at *19-20 (N.D. Ohio Oct. 12, 1999). As Defendant Menz's and Cartwright's Form 4 filings with the SEC make clear, even following the

sale of 250,000 shares, Menz and Cartwright still beneficially owned 5,172,821 and 5,728,207 shares, respectively.[24] This means that the over-allotment option resulted in the sale of only *4.8%* of Menz's holdings, and *4.4%* of Cartwright's holdings. Such *de minimis* sales do not support a strong inference of scienter. *See, e.g.*, *In re Credit Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999) (sale of 9% of holdings did not give rise to strong inference of scienter); *In re Corning*, No. 01-cv-6580, 2004 WL 1056063, at *28 (W.D.N.Y. Apr. 9, 2004) (sale of less than 15% of officer's stock does not raise strong inference of scienter); *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1202 (N.D. Ga. 2007) (retention of 90% of stock holdings negated strong inference of scienter).

Third, the fact that Defendants Menz and Cartwright retained such a high percentage of their shares, and own 50% of the Company's stock, is significant for another reason. The Amended Complaint alleges that the price of AAC's stock fell $20 per share during the putative class period. AC ¶ 23. Even by a conservative estimate, this means that Menz and Cartwright collectively *lost over $210 million*. That these two individuals suffered such a massive investment loss over the course of the class period undermines any inference that they acted with an intent to defraud the public. *See, e.g.*, *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 741 (W.D. Ky. 2004) (holding that stock sales did not suggest fraudulent intent where defendants lost over $200 million in value on shares they retained); *Grillo*, 553 F. Supp. 2d at 822 (large losses by CEO and CFO undermined inference of scienter).

Fourth, there is nothing unusual about the timing of the transaction. The underwriters exercised the over-allotment option five days into the putative class period (AC ¶ 82), and the

---

[24] *See* Form 4 Composite for Jerrod Menz and Michael Cartwright, attached hereto as Exhibit E. The Court may consider these filings on a motion to dismiss. *See In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 969-70 (S.D. Ohio 2009); *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 823-24 (E.D. Ky. 2008).

Amended Complaint does not allege any other "sales" for the remainder of the alleged class period.[25]  As one court held, it is unlikely that the defendants "would engage in a scheme to inflate the company's earnings after [they] sold [their] stock early on in the class period, and yet fail to sell any of [their] remaining shares at 'artificially inflated prices.'" *In re Credit Acceptance Corp. Sec. Litig.,* 50 F.Supp.2d 662, 677 (E.D.Mich.1999); *see also In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 350-51 (W.D. Tenn. 2001).  Indeed, "[t]he longer the time between stock sales and the disclosure of bad news, the more scienter is negated." *Grillo*, 553 F. Supp. 2d at 822.

Finally, the fact that neither of the other two individual Defendants is alleged to have sold stock during the putative class period rebuts any inference of scienter as to all Defendants.  As the Second Circuit held, "[t]he fact that other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public 'so that they could sell their stock at a huge profit.'" *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *see also In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 686 (D. Md. 2002) (where some defendants did not profit from the alleged fraud, any inference of scienter is negated as to all defendants).

Thus, the Amended Complaint's allegation regarding the underwriters' exercising the over-allotment option in the IPO does not support a strong inference of scienter; rather, the full picture of all Defendants' stock transactions squarely rebuts any inference of a conscious intent to defraud.

*Factor No. 2*: "divergence between internal reports and external statements on the same

---

[25]  Defendants Cartwright and Menz were not permitted to sell their AAC shares for a period of 180 days after the IPO, but they were free to sell their shares for approximately the last five months of the alleged class period.  *See* Exhibit A at pp. 137, 142-143 (Registration Statement excerpts).  The Amended Complaint does not allege that any defendant sold a single share during this period.

subject." *Helwig*, 251 F.3d at 552. The Amended Complaint does not allege any divergence between internal reports and external statements on the same subject.

*Factor No. 3*: "closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information." *Helwig*, 251 F.3d at 552. The Amended Complaint does not allege a closeness in time, and, in fact, the lack of temporal proximity here rebuts any inference of intent to defraud. The first allegedly misleading statement was issued on October 2, 2014 (AC ¶ 99), and the last allegedly misleading statement was issued on May 5, 2015. AC ¶ 116. The disclosures of the indictment occurred on July 29, 2015 and August 3, 2015 (AC ¶¶ 124, 128), nearly *three months* after the last allegedly misleading statement and *nine months* after the first allegedly misleading statement. AC ¶ 124. This does not support an inference of scienter. *See, e.g.*, *Goodyear Tire & Rubber Co.*, 436 F. Supp. 2d at 901 (four month gap between statement and disclosure was "too distant in time to draw an adverse inference"); *Gross v. Summa Four Inc.*, 93 F.3d 987, 995 (1st Cir. 1996) (five week gap did not support inference of scienter); *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 888 (D. Minn. 2007) (noting that three month gap was "not a particularly close temporal proximity" and finding no strong inference of scienter); *In re MCI Worldcom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778, 791 (S.D. Miss. 2002) (collecting cases and holding that ten week gap did not support strong inference of scienter).

*Factor No. 4*: "evidence of bribery by a top company official." *Helwig*, 251 F.3d at 552. The Amended Complaint does not allege any bribery by a top company official.

*Factor No. 5*: "existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit." *Helwig*, 251 F.3d at 552. The Amended Complaint does not allege the existence of an ancillary lawsuit charging fraud and the Company's quick

settlement of that suit.  The Amended Complaint does include allegations regarding the civil lawsuit that Ms. Benefield filed on July 26, 2011 (AC ¶ 19), but that lawsuit did not allege fraud and certainly was not quickly settled.  It was litigated for nearly three years.  Defendants also did not quickly settle the criminal charges that were filed – they sought dismissal of the charges and were successful in getting the murder charge dismissed.

*Factor No. 6*:  "disregard of the most current factual information before making statements."  *Helwig*, 251 F.3d at 552.  The Amended Complaint does not allege that Defendants disregarded any ***current*** factual information before making statements.  The last information that Defendants had according to the allegations in the Amended Complaint is that Mr. Gold indicated in August 2013 that the investigation was nearing completion.  After Defendants questioned the propriety of that investigation a month later, they did not hear anything else about the investigation until nearly two years later when the Indictment was filed.  Defendants' statements were entirely consistent with the most recent factual information the Company had at the time the statements were made.

*Factor No. 7*: "disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication."  *Helwig*, 251 F.3d at 552.  The Amended Complaint does not include any such allegations.

*Factor No. 8*:  "the personal interest of certain directors in not informing disinterested directors of an impending sale of stock."  *Helwig*, 251 F.3d at 552.  The Amended Complaint does not include any such allegations.

*Factor No. 9*:  "the self-interested motivation of defendants in the form of saving their salaries or jobs."  *Helwig*, 251 F.3d at 552.  The Amended Complaint attempts to meet this factor by alleging that (1) two defendants received bonus compensation in 2014 (AC ¶ 82) and (2)

disclosure of the investigation "could negatively impact the Company's [acquisition] strategy" and relationship with creditors (AC ¶ 19). As explained below, none of these allegations satisfies the last factor or raises a strong inference of scienter.

First, courts routinely reject the notion that bonus compensation is indicative of fraud. Courts hold that bonuses are "common among executives and have limited probative value as to scienter." *City of Pontiac Gen. Emps' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 835 (W.D. Mich. 2012). Indeed, as one court held, because it is so common for executive compensation and bonuses "to be based partly on the executive's success in achieving key corporate goals . . . we will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012); *see also Kindred Healthcare*, 299 F. Supp. 2d at 741 (a finding of scienter based on fact that defendants received bonuses linked to company performance would raise strong inference that "most executives commit securities fraud"); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (motives common to most corporate officers do not constitute motive for purposes of scienter inquiry). The fact that Mr. Menz and Mr. Cartwright received bonuses in 2014 is simply not probative of scienter.[26]

The allegations regarding the Company's acquisition strategy and credit facility agreements fare no better. As to the acquisition strategy, "such temporary inflating of the stock price to fuel acquisitions, a strategy not confined to [defendant] but to many public companies, is too attenuated to show motive or the necessary scienter." *In re Republic Servs., Inc. Sec. Litig.*, 134 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001) (dismissing complaint for failure to allege a strong inference of scienter); *see also Payne v. DeLuca*, 433 F. Supp. 2d 547, 564-565 (W.D. Pa. 2006)

---

[26] Further, the Amended Complaint fails to allege any connection between the alleged failure to disclose the criminal investigation and the receipt of this bonus compensation.

(holding that "attempting to increase a company's stock value as part of an acquisition strategy" is "insufficient [to] establish scienter").

The Amended Complaint's allegations related to the credit facility agreements are likewise insufficient to allege scienter.  In *Goodyear Tire & Rubber Company*, plaintiff alleged that the defendants must have committed fraud because they were likely to breach certain loan agreements.  436 F. Supp. 2d at 899.  The court held that this allegation was conclusory and insufficient to give rise to a strong inference of scienter because "no *specific* facts have been plead in the Amended Complaint to show that Defendants were motivated to commit fraud based on the fear of defaulting on certain loan covenants and credit agreements."  *Id.* (emphasis in original).  The same is true here.

Similarly, in *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338 (4th Cir. 2003), plaintiff alleged that defendants were motivated to "maintain[] positive relationships with creditors, avoid[] additional interest payments, and promot[e] future acquisitions."  *Id.* at 352.  The court rejected these generalized motives as insufficient under the Reform Act because they are shared by all companies.  *Id.; see also In re Yum! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d 846, 868-69 (W.D. Ky. 2014) (allegation that defendants acted with scienter to perpetuate "rapid growth rate and profitability" could be imputed to every corporate officer and did not support strong inference of scienter).

In short, none of the Amended Complaint's allegations of scienter support a "powerful or cogent" inference of scienter.  *Omnicare*, 769 F.3d at 473.

### 3. The Amended Complaint Should Be Dismissed Because the Competing, Non-Fraudulent Inferences Are More Compelling.

As part of the scienter analysis under *Tellabs*, the Court must also compare any inference of scienter "with other competing possibilities, allowing the complaint to go forward only if a

reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference." *Lynn*, 2014 WL 5431221, at *11. Here, the non-fraudulent inferences are **more** compelling than any inference of scienter.

First, as discussed *supra* at pp. 4-5, at the time AAC made the first of the statements at issue in October 2014, **over one year** had passed since California state officials had discussed bringing charges in connection with Mr. Benefield's death and, more importantly, **over one year** had passed since counsel had written to the California DOJ questioning the propriety of the investigation and receiving no response. The civil lawsuit had settled in May 2014 with no admission of liability by Defendants, and the coroner classified the death of Mr. Benefield as natural. The most reasonable inference from these facts is that Defendants thought the investigation had concluded, and, thus, that they had no duty to disclose it. As the court held in *Minneapolis Firefighters' Relief Association v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023 (8th Cir. 2011), "[w]e do not believe the inference of scienter is as compelling as the more innocent, simpler inference that the defendants did not believe they had a continuing duty to disclose information or, as Gareeb stated at the time, MEMC 'didn't think [the information] was material.'" *Minneapolis Firefighters' Relief Ass'n*, 641 F.3d at 1030; *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 587-88 (S.D.N.Y. 2013) (more compelling conclusion was that defendants did not think there was a need for public disclosure).

Second, and more importantly, the second-degree murder charges which the Amended Complaint alleges Defendants should have known would be brought were **dismissed** by the California Superior Court on March 18, 2016. *See* Exhibit D. As the court held, "insufficient evidence was presented to the grand jury to establish the elements of murder to the standard of probable cause." *Id.* Thus, in addition to the considerable gap in time between when public

officials announced that charges would soon be brought and when the indictment was actually issued (*compare* AC ¶¶ 73, 74 and AC ¶ 124), it is now clear that there was **no basis** for the second-degree murder charges to have been brought in the first instance, further supporting the inference that Defendants did not believe charges would be brought. In other words, because there was no basis to support a second-degree murder indictment, Defendants had every reason to believe that their statements regarding pending material legal proceedings and investigations were true and accurate when made.

*City of Austin Police Retirement Sys. v. ITT Educational Services, Inc.*, 388 F. Supp. 2d 932 (S.D. Ind. 2005) is instructive in this regard. There, plaintiff brought a securities class action against a for-profit school and, to bolster its scienter allegations, plaintiff pointed to the existence of investigations by the U.S. Attorney's Office and the SEC. *Id.* at 941. Over plaintiff's objections, the court took notice of the fact that the U.S. Attorney's Office and SEC had both subsequently terminated their investigations, observing that "[b]ased on plaintiff's own use of the federal criminal and SEC investigations, it is only fair to allow defendants to inform the court of the rest of the story." *Id.* at 942. "[T]he court treats those decisions [to terminate the investigations] as effectively **negating the adverse inferences plaintiff has sought to draw from the existence of those investigations**." *Id* (emphasis added). The court further noted that the sharp drop in the company's stock price when it first disclosed the investigations "shows that a company's share price can drop suddenly without any evidence or finding of wrongdoing by the company or its senior management." *Id.*

Third, it is undisputed that AAC disclosed the Indictment **the same day** that the Indictment was unsealed. AC ¶ 20. The Sixth Circuit has observed that "disclosing adverse information to the public negates an inference of scienter." *Kuyat*, 747 F.3d at 443. Indeed, "[i]t

is doubtful that the company intended to defraud investors in light of its willingness to disclose information that harmed its share prices."[27]  *Id.*

Because the Amended Complaint fails to allege particularized facts that give rise to a strong inference that any Defendant acted with scienter, and because any such inference is not as compelling as non-fraudulent inferences, the Amended Complaint should be dismissed.

### D.     The Section 20(a) Claim Should be Dismissed.

The Amended Complaint's claim under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), requires that the Amended Complaint state a claim for a violation of § 10(b) or Rule 10b-5.  *See Comshare*, 183 F.3d at 554 n. 11.  Because the Amended Complaint fails to allege adequately a primary violation of § 10(b) or Rule 10b-5, the claim for controlling person liability under § 20(a) must also be dismissed.  *Id.*; *see also Bondali*, 620 F. App'x at 493 (dismissal of § 10(b) violation required dismissal of § 20(a) claim as well); *Darby v. Century Business Services, Inc.*, 96 F. App'x 277, 286 (6th Cir. 2004) (same); *May*, 2014 WL 4897938, at *10 (same).

## IV.     CONCLUSION

The Amended Complaint should be dismissed with prejudice because it rests entirely on the notion that Defendants should have disclosed a California DOJ investigation, but there are no facts alleged that the investigation was pending at the time the alleged misstatements were made, much less any facts alleged that any Defendants knew or were reckless in not knowing that an investigation was pending at the time the alleged misstatements were made.

---

[27]    The Amended Complaint also attempts to frame AAC's disclosure of "far less consequential" litigation (AC ¶ 13) as indicative of scienter, but this disclosure shows exactly the opposite.  No matter how "minor" the **pending** litigation, AAC disclosed it.

Dated: April 14, 2016.                    Respectfully submitted,

                                          /s/ Britt Latham
                                          Britt K. Latham
                                          Joseph B. Crace, Jr.
                                          Bass, Berry & Sims, PLC
                                          150 Third Avenue South, Suite 2800
                                          Nashville, TN 37201
                                          Tel. (615) 742-7762
                                          blatham@bassberry.com

                                          John L. Latham (admitted *pro hac vice*)
                                          Jessica P. Corley (admitted *pro hac vice*)
                                          Lisa R. Bugni (admitted *pro hac vice*)
                                          Alston & Bird LLP
                                          1201 W. Peachtree St
                                          Atlanta, GA 30309
                                          Tel. (404) 881-7000
                                          john.latham@alston.com
                                          jessica.corley@alston.com
                                          lisa.bugni@alston.com

                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2016, the foregoing Memorandum of Law In Support of Defendants' Motion to Dismiss the Amended Complaint was filed electronically with the Clerk of the Court to be served upon the following by operation of the Court's electronic filing system and/or via electronic mail:

Jerry E. Martin
Timothy L. Miles
David W. Garrison
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Ste. 900
Nashville, TN 37214
Tel. (615) 244-2202

Frederick S. Fox
Donald R. Hall
Jeffrey P. Campisi
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel. (212) 687-1980

Ramzi Abadou
Kahn Swick & Foti, LLC
912 Cole Street, #251
San Francisco, CA 94117
Tel. (504) 445-1400

Jeffrey C. Block
Steven P. Harte
Block & Leviton LLP
155 Federal Street Suite
400 Boston, MA 02110
Tel. (617) 398-5600

Lewis W. Kahn
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447
Tel. (504) 455-1400

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
P.O. Box 150734
Nashville, TN 37215
(615) 248-2828

Jeremy A. Lieberman
J. Alexander Hood, II
Marc Gorrie
Pomerantz LLP
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100

Joey P. Leniski , Jr.
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801

Patrick V. Dahlstrom
Pomerantz LLP
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181

James A. Holifield , Jr.
Holifield & Associates, P.C.
8351 E Walker Springs Lane
Suite 303
Knoxville, TN 37923
(865) 566-0115

/s/ Britt K. Latham\_\_\_\_