# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DR. JOSEPH F. KASPER,** Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 3:15-CV-00923-TJC (Consolidated) |
| Plaintiff, | ) ) | Judge Jon P. McCalla |
| v. | ) | |
| **AAC HOLDINGS, INC., JERROD N. MENZ, MICHAEL T. CARTWRIGHT, ANDREW W. MCWILLIAMS, and KIRK R. MANZ,** | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

# TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF ARGUMENT ..................................................................1

BACKGROUND FACTS ................................................................................................................3

ARGUMENT AND CITATION OF AUTHORITY ......................................................................9

    I.      DEFENDANTS HAVE NOT ASSERTED ADVICE OF COUNSEL AS A DEFENSE ................................................................................................................9

    II.     PRODUCTION OF DOCUMENTS THAT ARE NOT PRIVILEGED DOES NOT WAIVE PRIVILEGE .................................................................................11

    III.    DEFENDANTS ARE NOT USING PRIVILEGE AS A SWORD AND A SHIELD ................................................................................................................14

    IV.    GREER'S ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT PROTECTED COMMUNICATIONS SHOULD NOT BE PRODUCED ..........14

CONCLUSION ...............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Akeva LLC v. Mizuno Corp.*,
    243 F. Supp. 2d 418 (M.D.N.C. 2003) ............................................................................10

*Amway Corp. v. P&G, Co.*,
    No. 1:98-cv-726, 2001 U.S. Dist. LEXIS 4561 (W.D. Mich. Apr. 3, 2001) ....................10

*Antoine v. Atlas Turner, Inc.*,
    66 F.3d 105 (6th Cir. 1995) ...............................................................................2, 11, 12

*Arcuri v. Trump Taj Mahal Assocs.*,
    154 F.R.D. 97 (D.N.J. 1994) .......................................................................................10, 12

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) .......................................................................................10

*Chrimar Sys. v. Cisco Sys.*,
    312 F.R.D. 560 (N.D. Cal. 2016) ..................................................................................10

*Edwards v. Whitaker*,
    868 F. Supp. 226 (M.D. Tenn. 1994) .......................................................................11, 12

*Glenmede Trust Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995) ............................................................................................9

*In re Antitrust Grand Jury*,
    805 F.2d 155 (6th Cir. 1986) ..........................................................................................1

*In re Chevron Corp.*,
    749 F. Supp. 2d 141 (S.D.N.Y. 2010) ..........................................................................13

*In re Cnty. of Erie*,
    473 F.3d 413 (2d Cir. 2007) ..........................................................................................13

*In re Echostar Communications Corp.*,
    448 F.3d 1294 (Fed. Cir. 2006) ......................................................................................9

*In re Grand Jury Subpoenas*,
    179 F. Supp. 2d 270 (S.D.N.Y. 2001) ..............................................................11, 12, 14

*In re Grand Jury Subpoenas (04-124-03 and 04-124-05)*,
    454 F.3d 511 (6th Cir. 2006) ..........................................................................................1

*In re Lindsey,*
    148 F.3d 1100 (D.C. Cir. 1998) ...................................................................................13

*In re Smirman,*
    267 F.R.D. 221 (E.D. Mich. 2010) ..............................................................................10

*New Phoenix Sunrise Corp. and Subsidiaries v. Comm'r,*
    408 F. App'x 908 (6th Cir. 2010) ..............................................................................9, 14

*S.E.C. v. AIC, Inc.,*
    No. 3-11-cv-176, 2013 U.S. Dist. LEXIS 130249 (E.D. Tenn. Sept. 12, 2013) ................9

*Seneca Ins. Co. v. Western Claims, Inc.,*
    774 F.3d 1272 (10th Cir. 2014) ....................................................................................9

*Smith & Nephew, Inc. v. N.H. Ins. Co.,*
    No. 2-04-cv-03027, 2011 U.S. Dist. LEXIS 53964 (W.D. Tenn. May 19, 2011).........2, 11

*Static Control Components, Inc. v. Lexmark Int'l,*
    No. 04-84-GFVT, 2007 U.S. Dist. LEXIS 20579 (E.D. Ky. Mar. 22, 2007)...................10

*Sol v. Whiting,*
    No. CV-10-01061, 2014 U.S. Dist. LEXIS 189518 (D. Ariz. Jan. 31, 2014) ..........2, 3, 13

*U.S. v. Bauer,*
    551 F.3d 786 (8th Cir. 2008) .......................................................................................9

*U.S. ex rel. Drakeford v. Tuomey,*
    792 F.3d 364, 371 (4th Cir. 2015) ...............................................................................9

*Wender v. U.S. Auto. Assoc.,*
    434 A.2d 1372 (D.C. Ct. App. 1981).............................................................................10

*Wolf Creek Ski Corp. v. Leavell-Mccombs Joint Venture,*
    No. 04-cv-01009, 2006 U.S. Dist. LEXIS 23093 (D. Colo. Apr. 25, 2006).....................13

## <u>Treatises</u>

1 MCCORMICK ON EVIDENCE, § 96 (7th ed. 2016) .........................................................2

## INTRODUCTION & SUMMARY OF ARGUMENT

The "overriding purpose of both the attorney-client and the work product privileges is to encourage the proper functioning of the adversary system." *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986). Plaintiffs' request that the Court order production of Defendants' communications with **seven** different law firms, including communications with Bass Berry & Sims, counsel to Defendants **in this case**,[1] is not only completely unsupported but also threatens to derail the adversary system.

Plaintiffs' ludicrous request, if granted, would thwart entirely the purposes of both the attorney-client privilege and the work production protection. "The purpose of the attorney-client privilege is to encourage clients to communicate freely and completely with their attorney." *In re Antitrust Grand Jury*, 805 F.2d at 162. Similarly, the work product protection ensures "that people [are] free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties." *In re Grand Jury Subpoenas (04-124-03 and 04-124-05)*, 454 F.3d 511, 520 (6th Cir. 2006). If Defendants are ordered to produce their communications with seven different lawyers/law firms regarding at least six different legal actions,[2] the purpose and public policy behind the attorney-client privilege and the work product protection will be destroyed.

Both of Plaintiffs' stated reasons for seeking to compel production of such a broad array

---

[1] *See* Plaintiffs' Memorandum of Law in Support of Lead Plaintiffs' Motion to Compel (the "Motion to Compel" or "Mot."), at p. 13.

[2] The legal actions are as follows: ██████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

of privileged and work product protected communications are factually and legally unfounded.

Plaintiffs first contend that Defendants rely on a "textbook example of a reliance on counsel defense." Mot. at 3. But the textbook makes clear that it is not a "reliance of counsel" defense as Plaintiffs call it throughout the Motion to Compel, but rather an "***advice*** of counsel" defense. *See* 1 MCCORMICK ON EVIDENCE, § 96 (7th ed. 2016) (emphasis added).

Here, there has been no ***advice*** of counsel. Indeed, Plaintiffs' Motion to Compel is entirely devoid of any reference to any ***advice*** on which Defendants rely. Rather, Defendants rely on facts obtained from their counsel's communications with the California Department of Justice.[3] As the Sixth Circuit has held, "[i]t is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). Defendants do not rely on any privileged communication or advice in this case, and, thus, the "advice of counsel" defense has not been raised.

Plaintiffs' second contention is that Defendants waived attorney-client privilege and work production protection for documents involving seven different law firms by producing certain communications with one of its lawyers, Phillip Greer. But the law is clear that waiver occurs only where "a party intentionally *puts protected information into the litigation.*" *Smith & Nephew, Inc. v. N.H. Ins. Co.*, No. 2-04-cv-03027, 2011 U.S. Dist. LEXIS 53964, *9 (W.D. Tenn. May 19, 2011) (emphasis in original). The emails with Mr. Greer that were produced are not protected. They are instances of Mr. Greer communicating on government relations or lobbying type matters. "Several courts have found that advice of the type given in lobbying efforts is not privileged." *Sol v. Whiting*, No. CV-10-01061, 2014 U.S. Dist. LEXIS 189518,

---

[3] Plaintiffs essentially concede this in their Motion by stating that Defendants "assert that they relied on the alleged non-response to Attorney King's letter as a defense." Mot. at 3.

*105 (D. Ariz. Jan. 31, 2014).  The production of non-privileged communications simply does not waive privilege.  *Id.*

For these reasons and others explained below, Plaintiffs' Motion to Compel should be denied in its entirety.

## BACKGROUND FACTS

### A.     The Complaint's Allegations

The Complaint alleges that the following statements made by Defendants during the alleged putative class period were misleading: (a) we are "not aware of any material pending or threatened investigations involving allegations of wrongdoing" and (b) "we are currently not aware of any legal proceedings the ultimate outcome of which, in our judgment based on information currently available, would have a material adverse effect on our business, financial condition or results of operations."  ECF No. 50, ¶¶ 99, 101.

The Complaint alleges these statements were misleading because Defendants failed to disclose a purported investigation by the California Department of Justice ("CA DOJ") that culminated in a grand jury indictment against Kristofer McCausland, James Fent, Mignon Dean, Jerrod Menz, Tami Scarcella, ABTTC, Inc., Forterus, Inc., and Forterus Health Care Services, Inc. for second-degree murder and dependent adult abuse.  The court in the Criminal Action dismissed the second-degree murder charge upon a motion, and the dependent adult abuse charge was dismissed pursuant to an agreed-upon resolution with the California Attorney General's Office.

### B.     Summary of Factual Defense at Issue

It is Defendants' position that there was no investigation to be disclosed as of October 2, 2014, when the putative class period starts, or in the months afterwards because, among other

reasons:

- 

- ████████████████████████████████████████████
  ██████████████████████

- After Hardy Gold, a Deputy Attorney General in the California Attorney General's Office, filed a declaration in the *Hill* Litigation indicating that he anticipated criminal charges would be filed, Defendants' counsel, Barry King, wrote to the CA DOJ advising of the impropriety of the declaration and questioning the legitimacy of any investigation given the Deputy Attorney General's connection to the defendant in the *Hill* Litigation. Despite subsequent follow-up emails to the CA DOJ, no response was received.

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████

To be clear, none of the above implicates any reliance on any ***advice*** of counsel. Rather, these are mere facts learned from third party sources that were conveyed to Defendants by counsel.

Defendants have been consistently clear in this case that they are not relying on the advice of counsel defense. Defendants' Answer and Affirmative Defenses do not plead advice of counsel as an affirmative defense. ECF No. 65. Indeed, Plaintiffs served an interrogatory that reads, "If you intend to assert reliance on the advice of counsel as a defense in this Action, identify the counsel and the advice You intend to rely upon." *See* Declaration of Donald R. Hall ("Hall Dec.") at Exhibit F. Defendants answered that "[s]ubject to and without waiver of the General Objections set forth below, Defendants do not currently intend to assert reliance on the advice of counsel defense." *Id.*

The interrogatory responses to which Plaintiffs cite as evidence of reliance on advice of counsel contain no request for or disclosure of any advice of counsel. Rather, the interrogatories ask for the disclosure of individuals who provided information about the CA DOJ:

**INTERROGATORY NO. 12:**
Identify all Person(s) who informed You that the CA DOJ either was and/or was no longer investigating the Company or any of its Employees concerning the death of Gary Benefield. In Your answer, identify each Person, the date and type of communication, any documents You relied upon in answering this interrogatory, and state the information provided to You.

**RESPONSE TO INTERROGATORY NO. 12:**
Subject to and without waiver of the General Objections set forth below, Defendants state that Phillip Greer had a conversation with Deborah Pogledich prior to Mr. Menz's interview on October 13, 2011 in which Ms. Pogledich confirmed that neither Mr. Menz nor ABTTC, Inc. was the target of an investigation. Phillip Greer also had periodic oral communications with Wayne Quint, Jr. ("Quint") of the California Department of Justice from 2013-2015, including in April 2013, June 2013, January 2014, April 2014, and May 2015, during which Quint informed Greer that the California Department of Justice was not investigating any of AAC's subsidiaries, officers, or employees concerning the death of Gary Benefield. Greer relayed the information he learned from Quint to AAC.

**INTERROGATORY NO. 13:**
Identify all Person(s) who informed You that the CA DOJ Investigation concerned Dr. Noreen Bumby. In Your answer, identify each Person, the date and type of communication, any documents You relied upon in answering this interrogatory, and state the information provided to You.

**RESPONSE TO INTERROGATORY NO. 13:**
Subject to and without waiver of the General Objections set forth below, Defendants state that Phillip Greer had periodic oral communications with Quint from 2013-2015, including in April 2013, June 2013, January 2014, April 2014, and May 2015, during which Quint informed Greer that the California Department of Justice was investigating Dr. Noreen Bumby. Greer relayed this information to AAC.

**INTERROGATORY NO. 14:**
On August 20, 2015, Defendant Cartwright stated "[n]otwithstanding a declaration made by an individual prosecutor in an unrelated civil matter in August 2013, based on all other facts and circumstances and after discussions between counsel and the Attorney General's office both before and after August 2013, we believe that an inquiry by the Attorney General's office was related to a

medical professional who was formerly engaged by our Company." Identify all facts and circumstances that Defendant Cartwright relied upon to inform his belief, and identify all discussions between counsel and the Attorney General's office.

**RESPONSE TO INTERROGATORY NO. 14:**

Subject to and without waiver of the General Objections set forth below, Defendants state that Phillip Greer had periodic oral communications with Quint from 2013-2015, including in April 2013, June 2013, January 2014, April 2014, and May 2015, during which Quint informed Greer that the California Department of Justice was investigating Dr. Noreen Bumby. Greer relayed this information to AAC. Defendant Cartwright relied upon this to inform his belief.

*See* Hall Dec. at Exhibit G.

Plaintiffs' Motion makes much of Defendant Cartwright's statement, which was not made in connection with this litigation, that Defendants' belief that the CA DOJ was investigating Dr. Bumby was formed "after discussions *between counsel and the Attorney General's office.*" But, again, that is a reference to counsel's discussions with a third party, which, as discussed below, is not protected by attorney-client privilege and does not involve *advice* of counsel.

Moreover, the communications between Mr. Greer and Defendants that were produced and attached as Exhibit O to the Hall Declaration do not involve any *legal advice* by Mr. Greer. Rather, the communications provide, in pertinent part, as follows:





- ████████████████████████████████████████████
████████████████████████████████████████████
██████████████

- ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

- ████████████████████████████████████████████
████████████████████████
██████████████

- ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

## C. Privileged Nature of Documents Subject to Motion to Compel

Plaintiffs seek to compel the production of "Defendants' communications with Attorneys King; Greer; Bass, Berry & Sims PLC; Beach, Cowdrey, Owen LLP; Manatt, Phelps & Phillips, LLC; Bird Marella P.C.; and Scheper, Kim & Harris LLP." Mot. at 13.[4] Each of these attorneys provided legal advice regarding pending or anticipated litigation, and, thus, communications with them are protected by both the attorney-client privilege and the work product doctrine. As set forth in the Declaration of Jerrod N. Menz ("Menz Dec."),

- ████████████████████████████████████████████
████████████████████████████████████████████

---

4   Plaintiffs complain about the fact that Defendants' privilege log has over 5,400 entries, but the size of the privilege log is due to the nature of Plaintiffs' document requests, which plainly requested attorney-client privileged and work product protected documents, including those created after the indictment was issued.  For example, Plaintiffs sought production of (a) "[a]ll documents concerning any legal proceedings against the Company and/or any of the Individual Defendants" (Request No. 21); (b) "[a]ll documents concerning the Benefield litigation" (Request No. 34); (c) "[a]ll documents concerning the Hill litigation" (Request No. 35); (d) "[a]ll documents concerning the CA DOJ Investigation" (Request No. 36); and (e) "[a]ll documents concerning Criminal Action, including without limitation, the minutes and transcripts of proceedings of the grand jury" (Request No. 41).



Plaintiffs' Motion to Compel does not challenge the plainly privileged and work product protected nature of these documents. Rather, Plaintiffs assert that the privilege has been waived based on Defendants' reliance on facts learned from Messrs. Greer and King and Defendants' production of non-privileged emails with Mr. Greer. As explained below, Plaintiffs are flat wrong, and there is no basis to order production of any of these privileged and work product protected documents.

## I. DEFENDANTS HAVE NOT ASSERTED THE ADVICE OF COUNSEL DEFENSE

Without citing to a shred of *advice* of counsel on which Defendants rely, Plaintiffs wrongly contend Defendants have asserted the advice of counsel defense. No such defense has been asserted. To the contrary, Defendants specifically stated in discovery responses that they "do not currently intend to assert reliance on the advice of counsel," a fact that Plaintiffs apparently want to reject. Regardless, "[t]o establish good faith reliance on the advice of counsel, defendants must prove that they '(1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice.'" *S.E.C. v. AIC, Inc.*, No. 3-11-cv-176, 2013 U.S. Dist. LEXIS 130249, *21 (E.D. Tenn. Sept. 12, 2013).

*Plaintiffs' Motion does not refer to or quote a single piece of legal advice that Defendants received and upon which they relied*. As Plaintiffs' cases make clear, the advice must be *legal* advice for the advice of counsel defense to be at issue. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 371 (4th Cir. 2015) (reliance on "advice of its longtime counsel" as to Stark Law implications); *Seneca Ins. Co. v. Western Claims, Inc.*, 774 F.3d 1272, 1277 (10th Cir. 2014) (reliance on "advice of counsel" as to reasonableness of settlement); *New Phoenix Sunrise Corp. and Subsidiaries v. Comm'r*, 408 F. App'x 908, 919 (6th Cir. 2010) (reliance on "advice" in law firm's tax opinion on tax shelter); *U.S. v. Bauer*, 551 F.3d 786, 792 (8th Cir. 2008) (reliance on advice of counsel provided during course of bankruptcy proceedings); *In re Echostar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (reliance on "advice of in-house counsel" opinion on patent infringement); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 480 (3d Cir. 1995) (reliance on "advice of counsel" regarding Internal Revenue Code);

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (reliance on "advice of its lawyers" as to tax position); *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (reliance on "advice of counsel defense" to claims of willful patent infringement); *Static Control Components, Inc. v. Lexmark Int'l*, No. 04-84-GFVT, 2007 U.S. Dist. LEXIS 20579 (E.D. Ky. Mar. 22, 2007) (reliance on "advice-of-counsel defense" in patent infringement case); *Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 419 (M.D.N.C. 2003) (reliance on "advice of counsel" in patent infringement case); *Amway Corp. v. P&G, Co.*, No. 1:98-cv-726, 2001 U.S. Dist. LEXIS 4561, *9 (W.D. Mich. Apr. 3, 2001) (reliance on "advice of counsel" in a malicious prosecution action); *Wender v. U.S. Auto. Assoc.*, 434 A.2d 1372 (D.C. Ct. App. 1981) (reliance on "advice of counsel" as to evaluation of underlying case in insurance coverage dispute).

Here, as described above, Defendants are relying not on any legal advice, but on ***facts*** conveyed to them by counsel. Plaintiffs do not cite a single case holding that reliance on *facts* obtained from counsel inserts the advice of counsel defense into the case and waives privilege. Indeed, the cases provide to the contrary – where the client relies only on information learned from counsel, the advice of counsel is not at issue and privilege has not been waived.

> Plaintiffs further argue that since "Flanagan claims to have relied to an extent on the information he learned from [counsel] … that information has been placed at issue in this suit, and to the extent any privilege applies, it has been waived." But, as defendant notes, if this is reliance upon "information" per se, and not the advice or the communication with counsel, the confidential communication has not been put at issue, and thus confidentiality is not waived.

*Arcuri v. Trump Taj Mahal Assocs.*, 154 F.R.D. 97, 104 (D.N.J. 1994); *see also Chrimar Sys. v. Cisco Sys.*, 312 F.R.D. 560, 564 (N.D. Cal. 2016) ("Cisco has not waived any privilege with respect to the document because Cisco has only relied on the facts underlying the communication and not on the actual advice from the attorneys as the basis for its defense").

The reason advice of counsel and the resulting waiver of privilege does not apply when a

client relies on *facts* obtained from counsel is because, as the Sixth Circuit has held, "[i]t is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Antoine*, 66 F.3d at 110. As another court explained,

> Conversations between lawyers when one lawyer is merely relaying factual information, such as a conversation with a third party, to another lawyer are not privileged (or protected by the work product doctrine). Communications about non-legal issues such as public relations, the solicitation of prominent individuals or persons …, and strategies for persuading [political figures] are not privileged (or protected by the work product doctrine). *The lawyers' reports to the clients on these non-legal items and lobbying efforts are not privileged (or protected by the work product doctrine)*.

*In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001) (emphasis added).

Defendants' reliance on facts obtained from counsel does not inject the advice of counsel defense into the case and does not result in a waiver of privilege. Plaintiffs' Motion to Compel should be denied.

## II.  PRODUCTION OF DOCUMENTS THAT ARE NOT PRIVILEGED DOES NOT WAIVE PRIVILEGE

Plaintiffs next contend that the production of communications with Mr. Greer relating to government relations/lobbying-type efforts waives privilege as to all of Defendants' communications with the six other law firms. Plaintiffs are wrong.

For subject matter waiver to apply, there must first be voluntary production of a *privileged and protected* communication. "It is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994). As another court explained, "[s]ubject matter waiver is limited to situations in which a party intentionally *puts protected information into the litigation* in a selective, misleading or unfair manner." *Smith & Nephew*, 2011 U.S. Dist. LEXIS 53964, *9 (emphasis in

original).

Defendants have not produced any protected information. As an initial matter, as discussed above, the documents produced are simply Mr. Greer conveying facts learned from the Attorney General's office. "[A] communication between the attorney and any third party not the client is not privileged even if the information contained therein is then conveyed by the attorney to the client." *Arcuri*, 154 F.R.D. at 102; *see also Antoine*, 66 F.3d at 110; *In re Grand Jury Subpoenas*, 179 F. Supp. 2d at 291.

Moreover, Mr. Greer's services at issue are his contacts with the Attorney General's office. Mr. Greer's emails make this clear – ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

Mr. Greer's services in communicating with the Attorney General's office are in the nature of government relations or lobbying.[5] "[I]dentifying and contacting … government officials" is considered non-legal lobbying work, which is not protected by the attorney-client privilege. *In re Grand Jury Subpoenas*, 179 F. Supp. 2d at 289. "The privilege only applies if the lawyer is providing legal advice or services, and it will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor." *Edwards*, 868 F. Supp. at 228.

As one court explained, "communications, even between lawyer and client, are not

---

[5] Plaintiffs note that Mr. Greer is not a registered lobbyist in the State of California. There is no requirement in the case law that the lobbying services be provided by a registered lobbyist to be considered not attorney-client privileged. Rather, the focus is on the nature of the services provided. Here, the nature of the services provided was government relations/lobbying, which is not legal services.

privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they relate to the rendition of 'professional legal services.' Hence, the attorney-client privilege does not apply to communications with respect to" activities that are "concentrated heavily in media and public relations, lobbying, and political activism." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010); *see also Sol*, 2014 U.S. Dist. LEXIS 189518, *105, *citing In re Cnty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as lawyer, as (for example), a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged"); *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) ("advice on political, strategic, or policy issues, … would not be shielded from disclosure by the attorney-client privilege"); *Wolf Creek Ski Corp. v. Leavell-Mccombs Joint Venture*, No. 04-cv-01009, 2006 U.S. Dist. LEXIS 23093 (D. Colo. Apr. 25, 2006) ("[L]egislative meetings, and progress reports and lobbying activities … do not constitute legal advice and are not protected by the attorney-client privilege or work product").

The fact that Mr. Greer is a lawyer and provides legal advice to Defendants on other matters does not change the fact that his government relations/lobbying services are not privileged. "If a lawyer happens to act as a lobbyist or in some other capacity, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist [or other] role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client including advice on matters that may also be the subject of lobbying or other non-legal efforts." *In re Chevron Corp.*, 749 F. Supp. 2d at 166.

Mr. Greer's communications with the Attorney General's office were not legal in nature and did not involve any legal advice. Thus, the emails with Mr. Greer reflecting those activities are not attorney-client privileged, and the production of those non-privileged emails cannot

operate as a waiver of privilege applicable to communications regarding the ███████████ ████████████████████████████████. Plaintiffs' Motion to Compel should be denied.

## III. DEFENDANTS ARE NOT USING PRIVILEGE AS A SWORD AND A SHIELD

Plaintiffs contend that Defendants are using privilege as both a sword and a shield. Plaintiffs are wrong. The Sixth Circuit has explained the shield and sword concept as follows: "Litigants cannot hide behind the privilege if they are ***relying upon privileged communications*** to make their case. The attorney-client privilege cannot at once be used as a shield and a sword." *New Phoenix*, 408 F. App'x at 919 (emphasis added). As explained in the preceding sections, Defendants are not relying upon any privileged communications to make their case, and, thus, the shield and sword principle simply does not apply.

## IV. GREER'S ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT PROTECTED COMMUNICATIONS SHOULD NOT BE PRODUCED

Plaintiffs contend that all communications involving Mr. Greer should be produced. But, as set forth in the Menz Declaration, in addition to the non-legal services provided, Mr. Greer provided legal services in the ███████████████████████████████████ ███████████████████████████████████████████████████████████████████.

Moreover, Mr. Greer's privileged communications on these matters often involved the other counsel who were retained in connection with these matters. *See* Hall Dec., Exhibit I. Thus, an order to produce all privileged communications involving Mr. Greer is nearly the same as an order to produce all privileged communications with the six other law firms involved in these six legal actions, which, for the reasons set forth above, is not supported by the law, facts, or equity.

And, to be clear, Mr. Greer's provision of non-legal services does not operate as a waiver of the privilege applicable to his legal services. "The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged

communications with a client who is seeking legal advice." *In re Grand Jury Subpoenas*, 179 F.

Supp. 2d at 285. Thus, there is no basis to order production of the communications with Mr.

Greer regarding ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████, that are being

withheld as protected by the attorney-client privilege and work product doctrine.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to

Compel be denied.

Dated: June 28, 2017                                  Respectfully submitted,

Respectfully submitted,

/s/ Joseph Crace
Britt K. Latham (BPR # 023149)
Joseph B. Crace, Jr. (BPR # 027753)
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel. (615) 742-7762
blatham@bassberry.com

John L. Latham (admitted *pro hac vice*)
Jessica P. Corley (admitted *pro hac vice*)
Lisa R. Bugni (admitted *pro hac vice*)
David Gouzoules (admitted *pro hac vice*)
Alston & Bird LLP
1201 West Peachtree St
Atlanta, GA 30309
Tel. (404) 881-7000
john.latham@alston.com
jessica.corley@alston.com
lisa.bugni@alston.com
david.gouzoules@alston.com

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 28, 2017, the foregoing Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel was filed electronically with the Clerk of the Court to be served upon the following by operation of the Court's electronic filing system and/or via electronic mail:

Jerry E. Martin
Timothy L. Miles
David W. Garrison
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Ste. 900
Nashville, TN 37214
Tel. (615) 244-2202

Frederick S. Fox
Donald R. Hall
Jeffrey P. Campisi
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel. (212) 687-1980

Ramzi Abadou
Kahn Swick & Foti, LLC
912 Cole Street, #251
San Francisco, CA 94117
Tel. (504) 445-1400

Jeffrey C. Block
Steven P. Harte
Block & Leviton LLP
155 Federal Street Suite
400 Boston, MA 02110
Tel. (617) 398-5600

Lewis W. Kahn
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447
Tel. (504) 455-1400

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
P.O. Box 150734
Nashville, TN 37215
(615) 248-2828

Jeremy A. Lieberman
J. Alexander Hood, II
Marc Gorrie
Pomerantz LLP
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100

Joey P. Leniski , Jr.
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801

Patrick V. Dahlstrom
Pomerantz LLP
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181

James A. Holifield , Jr.
Holifield & Associates, P.C.
8351 E Walker Springs Lane
Suite 303
Knoxville, TN 37923
(865) 566-0115

*/s/ Joseph Crace*