**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| DR. JOSEPH F. KASPER, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) AAC HOLDINGS, INC., JERROD N. MENZ, MICHAEL T. CARTWRIGHT, ANDREW W. MCWILLIAMS and KIRK R. MANZ, ) ) ) ) ) Defendant. ) ) ) | No. 15-cv-00923-JPM-jsf |

## ORDER CONCERNING CLASS CERTIFICATION

Before the Court is Plaintiffs' Motion to Certify the Class, Appoint Class Representatives, and Appoint Class and Liaison Counsel, filed October 18, 2016. (ECF No. 77.) Defendants filed a response in opposition on January 24, 2017. (ECF No. 106.) Plaintiffs filed a reply on February 10, 2017. (ECF No. 108.)

For the reasons stated below, the Court GRANTS Plaintiffs' Motion to Certify the Class:

> [A]ll persons and entities who purchased or otherwise acquired AAC securities between October 2, 2014, and [August 4, 2015 at 9:40 a.m. (EST)], inclusive. Excluded from the class are Defendants, directors, and officers of AAC, as well as their families and affiliates.
>
> (ECF Nos. 78 at PageID 2513; 119 at PageID 4070.)

1

The Court GRANTS Plaintiffs' Motion to appoint Kaplan Fox, Kahn Swick and Barrett Johnston as Class Counsel. The Court GRANTS Plaintiffs' request to appoint Lead Plaintiff as Class Representative.

## I.     BACKGROUND

### A.     Factual Background

This case involves allegations that Defendants AAC Holdings, Inc. ("AAC"), AAC's Chairman and Chief Executive Officer ("CEO") Michael T. Cartwright, AAC's Chief Financial Officer ("CFO") Kirk R. Manz, former AAC President and Director Jerrod N. Menz, Chief Accounting Officer Andrew W. McWilliams along with 'insider defendants'— those that possessed the power and authority to control the contents of AAC's press releases, investor and media presentations, and Securities and Exchange Commission ("SEC") filings as well as intimately involved with and aware of, or deliberately disregarded, all aspects of the Company's operations[1]—violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5(b) promulgated thereunder. (Am. Compl., ECF No. 50 ¶ 2.)

AAC provides inpatient substance abuse treatment for individuals with drug and alcohol addiction. (Id. ¶ 4.) Gary Benefield was a patient and resident of an AAC facility called "A Better Tomorrow." (Id. ¶ 6 & n.3.) Benefield died in July 2010 after being administered drugs by an AAC employee. (Id. ¶ 6 n.3.)

---

[1] Plaintiffs also name Defendant General Counsel and Secretary of AAC, Kathryn Sevier Phillips. Plaintiffs assert that "[a]t all relevant times, Ms. Phillips was AAC's chief lawyer and reported directly to Defendant Cartwright. In her role, Ms. Phillips either knew about or was severely reckless in not being aware of the Benefield Litigation and California DOJ investigation. She also participated alongside the Insider Defendants in making the ultimate decision to conceal the criminal investigation from AAC's shareholders." (Am. Compl., ECF No. 50 ¶ 45.)

On August 29, 2013, in light of Benefield's death, California Deputy Attorney General Hardy R. Gold executed a sworn declaration, stating that the California Department of Justice's "criminal investigation of [AAC Affiliates] i[s] continuing and nearing completion. I anticipate that criminal charges will be filed." (Id. ¶ 7 (emphasis removed).) This declaration was filed "in a lawsuit brought by Defendant Menz and the AAC Affiliates for defamation against a whistleblower who had provided background information for the California DOJ's investigation into Mr. Benefield's death." (Id.) On September 18, 2013, Defendant Menz was personally copied on a letter from his counsel, Barry P. King, to California Chief Deputy Attorney General Nathan R. Barankin that referenced the Gold declaration. (Id. ¶ 8.)

AAC went public on October 1, 2014,[2] offering common stock to investors in an initial public offering set at $15 per share. (Id.) The stock began trading on the New York Stock Exchange on October 2, 2014. (Id.) On July 2, 2015, the share price reached $44.75 per share. (Id. ¶ 5.) Plaintiffs allege, however, that "AAC's success as a publicly-traded Company was the result of an undisclosed fraudulent scheme to deceive investors about an active criminal investigation by the California [DOJ] of Defendant Menz and AAC's largest and most profitable subsidiaries." (Id. ¶ 6.)

On July 21, 2015, a California grand jury returned a second-degree murder and dependent adult abuse indictment against Defendant Menz, AAC affiliates, and others, for the death of Benefield. (Id. ¶ 19.) On July 29, 2015, the Superior Court in California unsealed the criminal indictment returned by a grand jury against Menz and AAC's affiliates. (Id. ¶ 138.)

---

[2] On October 1, 2014, the SEC declared as effective the Registration Statement that AAC previously filed with the SEC on Form S-1. (Id. ¶ 9.)

3

Also on July 29, 2015, Plaintiffs allege that "AAC partially disclosed that 'charges' had been brought 'against subsidiaries of AAC and two current and three former employees.' Defendants, however, failed to disclose that the charges included the second-degree murder and dependent adult abuse of Mr. Benefield." (Id. ¶ 20.) On the same day, AAC also allegedly reported better than expected financial results for AAC's 2015 second quarter. (Id. ¶ 21.)

"[O]n August 1, 2015, the Company hosted an earnings conference call where Defendant Cartwright claimed that, while he was 'just now having the opportunity to review [the six page] indictment,' he 'firmly believe[d] that the California Department of Justice case is without merit.'" (Id.)

On August 3, 2015, AAC's stock price fell by $5.22 per share (or by 14%). (Id. ¶ 22.) The next day, Bleeker Street Research published a report entitled, "American Addiction Centers: Even More Undisclosed Deaths and the Start of Real Problems," which revealed new facts and details about the indictment and history of wrongdoing at the AAC Affiliates. (Id.) On August 4, 2015, AAC's stock fell to $12.90 per share. (Id. ¶ 23.)

On August 5, 2015, Forbes published an article entitled, "AAC Holdings' Lawyers Knew About Criminal Investigation in 2013," which reported that "[i]n a response to questions from Forbes about when it became aware of the criminal investigation, the company said in a statement last week it learned of the grand jury investigation into the death of Gary Benefield about six weeks ago." (Id. ¶ 23.) The article further stated that "AAC Holdings had not disclosed the criminal investigation into Gary Benefield's death in any of its securities filings that were made with the SEC as it prepared for its IPO last year or since, until the indictment was unsealed." (Id. ¶ 24.)

4

**B.      Procedural Background**

On August 24, 2015, Dr. Joseph F. Kasper, individually and on behalf of those similarly situated, filed a complaint against Defendants.  (ECF No. 1.)  On October 23, 2015, Plaintiffs filed a Motion to Appoint Lead Plaintiff, Lead Counsel, and Liasion Counsel, as well as a Motion to Consolidate Cases.  (ECF Nos. 19-25.)  On October 26, 2015, the Court consolidated Tenzyk v. AAC Holdings, Inc., et al. (Case No. 3-15-cv-0986) and  Kasper v. AAC Holdings, Inc., et al. (Case No. 3- 15-cv-0923).  (ECF No. 32.)  On December 30, 2015, the Court entered a Stipulation and Order Appointing Lead Plaintiffs, Lead Counsel, and Liaison Counsel.  (ECF No. 47.)  The Court's Order appointed Arkansas Teacher Retirement System ("ATRS") and James P. Gills, M.D. as Lead Plaintiffs.  (Id.)

On February 29, 2016, Plaintiffs filed an Amended Complaint for consolidated class actions.  (ECF No. 50.)

On April 14, 2016, Defendants filed a Motion to Dismiss, asserting that Plaintiffs failed to plead an actionable misstatement or omission or strong inference of scienter, and that the Section 20(a) claim should be dismissed.  (ECF Nos. 54-55.)  Plaintiffs filed their response in opposition on May 31, 2016.  (ECF No. 56.)  Defendants filed their reply on June 15, 2016.  (ECF No. 58.)  On July 1, 2016, the Court denied Defendant's Motion to Dismiss, finding that Plaintiffs pled with sufficient specificity required by the statute for an actionable misstatement and omission, and scienter; and sufficiently alleged a claim for Rule 20(a) to survive a motion to dismiss.  (ECF Nos. 59-60.)

On July 6, 2016, the Court ordered Defendants to serve their answer to the Consolidated Complaint by July 22, 2016.  (ECF No. 62.)  Defendants then filed their answer

5

on July 22, 2016.  (ECF No. 65.)  On August 31, 2016, the Court entered a Joint Initial Case Management Order.  (ECF No. 72.)

On November 4, 2016, the Court entered the Stipulation and Protective Order for the parties.  (ECF No. 84.)  On November 28, 2016, Plaintiffs filed a Motion to Set a Case Management Conference.  (ECF Nos. 85-87.)  Plaintiffs alleged that Defendants failed to produce a single document in response to the Requests Plaintiffs served on July 19, 2016.  (ECF No. 86.)  As a result, Plaintiffs sought to discuss the case management schedule to determine how Defendants' failure effects and/or delays the schedule.  (Id. ¶¶ 13-14.)  The Court found the motion moot in light of the teleconference scheduled with Judge McCalla.  (ECF No. 90.)

The Court held a telephonic status conference on December 13, 2016, amending the discovery and trial schedule.  (ECF Nos. 91-92.)  On December 22, 2016, proposed class representative, Dr. James Gills, withdrew his request to be appointed class representative.  (See ECF No. 94.)  Thus, ATRS is the one remaining plaintiff seeking to be appointed class representative.

On December 22, 2016, Defendants filed a redacted response in opposition to Plaintiffs' Motion for Class Certification.  (ECF No. 95.)  Defendants refiled an un-redacted response in opposition on January 24, 2017.  (ECF No. 106.)

Plaintiffs filed a reply on February 10, 2017.  (ECF No. 108.)  On February 15, 2017, Defendants moved for Oral Argument on Lead Plaintiffs' Motion for Class Certification.  (ECF No. 110.)  The Court granted the motion for oral argument on February 23, 2017.  (ECF No. 111.)  A telephonic motion hearing was set for April 4, 2017 at 9:30 a.m. (CST).  (ECF No. 112.)

On March 8, 2017, Plaintiffs sought leave to file a sur-reply on the issue of class certification. (ECF No. 115.) Defendants opposed the motion on March 10, 2017. (ECF No. 116.) Defendants filed a response in opposition to Plaintiff's sur-reply on March 10, 2017. (ECF No. 116.)

On April 4, 2017, the Court held a telephonic Motion Hearing regarding Plaintiffs' pending motions. (Min. Entry, April 4, 2017). Following the hearing, the Court entered an Order Requiring Supplemental Briefing. (ECF No. 117.) The parties filed timely supplemental briefs on April 18, 2017 (ECF No. 119) and May 2, 2017 (ECF No. 121).

The Court addresses the pending motions. First, the Court addresses the motion to certify class. Second, the Court addresses the motions to appoint class counsel and certify Lead Plaintiff ATRS as representative of the proposed class.

## II.      DISCUSSION

### 1.      MOTION TO CERTIFY CLASS

#### A.      Legal Standard

##### 1. Implied Prerequisites to Rule 23(a)

"[The] courts have implied two . . . prerequisites to class certification that must be satisfied prior to even addressing the requirements of Rule 23(a). . . ." City of Fairview Heights v. Orbitz, Inc., 05–CV–840–DRH, 2008 WL 895650, at *2 (S.D. Ill. Mar. 31, 2008). First, "the class must be sufficiently defined so that the class is identifiable." Id. (citing Alliance to the End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977)). Second, the named plaintiffs must fall within the proposed class and have standing both at the time the complaint is filed and at the time the class is certified. Farm Labor Org. Comm. v. Ohio State Highway Patrol, 184 F.R.D. 583, 586 (N.D. Ohio 1998). With respect to the first prerequisite,

"the class description [must be] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Wright, et al., supra, § 1760, at 134. "A proposed class may be deemed overly broad if it would include members who have not suffered harm at the hands of the defendant." Faralli v. Hair Today, Gone Tomorrow, 1:06-CV-504, 2007 WL 120664, at *6 (N.D. Ohio Jan. 10, 2007) (quoting Chaz Concrete Co. v. Codell, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006)). Moreover, "the proposed class definition must be sufficiently definite to ascertain class membership and must not depend on a merits-based adjudication to determine inclusion." Schilling v. Kenton Cnty., Ky., No. CIV. A. 10-143-DLB, 2011 WL 293759, at *7 (E.D. Ky. Jan. 27, 2011).

## 2. Rule 23(a) Requirements

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements – numerosity, commonality, typicality, and adequate representation – serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 850 (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of

8

law or fact, etc." <u>Dukes</u>, 131 S. Ct. at 2551. "[I]f Plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . ." 7A Charles Alan Wright, et al., Federal Practice and Procedure § 1759, at 130-31 (3d ed. 2005).

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has held that there is "no specific number" that will or will not render joinder impracticable. <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1079 (6th Cir. 1996). "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." <u>Daffin v. Ford Motor Co.</u>, 458, F.3d 549, 552 (6th Cir. 2006) (citing <u>In re Am. Med. Sys.</u>, 75 F.3d at 1079).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." <u>Dukes</u>, 131 S. Ct. at 2551. "The interests and claims of the various Plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." <u>Fallick v. Nationwide Mut. Ins. Co.</u>, 162 F.3d 410, 424 (6th Cir. 1998) (quoting <u>Forbush v. J.C. Penney Co.</u>, 994 F.2d 1101, 1106 (6th Cir. 1993)).

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." <u>In re Am. Med. Sys.</u>, 75 F.3d at 1082. "Typicality determines whether a sufficient

9

relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) (citing In re Am. Med. Sys., 75 F.3d at 1082). A class representative is not typical "when a plaintiff can prove his own claim but not 'necessarily have proved anybody else's claim.'" Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007) (quoting Sprague, 133 F.3d at 399). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." Id. In Beattie, the Sixth Circuit concluded that the named plaintiffs' claims were typical when the plaintiffs alleged that Defendant billed for a telephone service under a misleading description, despite the fact that some class members enrolled in the service and some did not. Id. The Sixth Circuit stated that, despite the differing actions of the class members, the named plaintiffs' claims still arose from the same allegedly deceptive billing practice that gave rise to the claims of the other class members. Id.

Rule 23(a)(4) requires that the representative parties demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class representative to be deemed adequate, "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter v. Gen. Motors Corp., 532 F.2d 511, 524-25 (6th Cir. 1976). The first step of this analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent." Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 429 (6th Cir. 2012) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).

### 3. Rule 23(b)(3) Requirement

In addition to the requirements of Rule 23(a), "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). A class should be certified under Rule 23(b)(3) when (1) common questions of law and fact predominate over any question affecting only individual class members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### a. Predominance & Reliance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 353 (6th Cir. 2011) (citation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011) ("Halliburton I") (quoting Fed. R. Civ. P. 23(b)(3)). "The elements of an implied § 10(b) cause of action for securities fraud are (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1207, 185 L. Ed. 2d 308 (2013) (internal citations omitted).

"The reliance element [of a § 10(b) and Rule 10b-5 securities fraud claim] 'ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury.'" Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014) ("Halliburton II") (quoting Conn. Retirement Plans and Trust Funds, 133 S. Ct. at 1192). The

Supreme Court held in <u>Basic v. Levinson</u>, 485 U.S. at 245 (1988), that plaintiffs can satisfy

the reliance element in a Rule 10b-5 action by invoking a rebuttable presumption of reliance,

rather than proving direct reliance on a misrepresentation. This rebuttable presumption was

based on the "fraud-on-the-market" theory, and presumes that

> [a]n investor who buys or sells stock at the price set by the market does so in
> reliance on the integrity of that price. Because most publicly available
> information is reflected in market price, an investor's reliance on any public
> material misrepresentations . . . may be presumed for purposes of a Rule 10b-5
> action.

<u>Basic</u>, 485 U.S. at 247.

To invoke the <u>Basic</u> presumption, "a plaintiff must prove that: (1) the alleged

misrepresentations were publicly known, (2) they were material, (3) the stock traded in an

efficient market, and (4) the plaintiff traded the stock between when the misrepresentations

were made and when the truth was revealed." <u>Halliburton II</u>, 134 S. Ct. at 2413 (citing <u>Basic</u>,

485 U.S. at 248; <u>Amgen</u>, 133 S. Ct. at 1198).

The presumption is rebuttable, however, and a defendant may rebut the presumption of

reliance with "[a]ny showing that severs the link between the alleged misrepresentation and

either the price received (or paid) by the plaintiff, or his decision to trade at a fair market

price." <u>Basic</u>, 485 U.S. at 248. For example, a defendant could rebut the presumption with

evidence that "the misrepresentation did not, for whatever reason, actually affect the market

price, or that the plaintiff would have bought or sold the stock even had he been aware that the

stock's price was tainted by fraud." <u>Halliburton II</u>, 134 S. Ct. at 2408.

Defendant may also rebut the "presumption of reliance by showing that the plaintiff's

reliance on the market price was actually unreasonable," such as by showing that "the investor

knew, or had reason to know, that the misrepresentations were in fact false." <u>Semerenko v.</u>

Cendant Corp., 223 F.3d 165, 180 & n. 8 (3d Cir. 2000). "In determining the duration of a

securities fraud class based on a fraud-on-the-market theory, the Court must determine

whether a curative disclosure had been made so as to render it unreasonable for an investor, or

the market, to continue to be misled by the defendants' alleged misrepresentations." In re Fed.

Nat. Mortg. Ass'n Sec., Derivative & ""ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C. 2008)

(internal quotation marks omitted).

> Courts must tread a fine line when parties dispute whether a particular release
> cured prior misrepresentations. While a court cannot delve into the merits, it
> should preliminarily evaluate when curative information was publicly
> announced or otherwise disseminated to the market, for the class period should
> end when prior misrepresentations are fully cured. Thus, a majority of courts
> engage in a limited review to determine when a market was cured of prior
> misrepresentations. Courts that have engaged in this limited review refuse to
> narrow the class period if there is a substantial question of fact as to whether
> the release had cured the market or was itself misleading.

Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 614 (S.D. Ohio 2003) (internal citations and

quotation marks omitted); accord Shirk v. Fifth Third Bancorp, No. 05-CV-49, 2007 WL

1100429, at *16 (S.D. Ohio Apr. 10, 2007);  In re Schering-Plough Corp./ENHANCE Sec.

Litig., No. CIV.A. 8-397 DMC/JAD, 2012 WL 4482032, at *9 (D.N.J. Sept. 25, 2012);

Hodges v. Akeena Solar, Inc., 274 F.R.D. 259, 271 (N.D. Cal. 2011); In re Enron Corp. Sec.,

529 F. Supp. 2d 644, 712 (S.D. Tex. 2006).

### B.  Parties' Arguments

#### 1.  Plaintiffs' Arguments

Plaintiffs originally moved the Court to certify the following Class:

> [A]ll persons and entities who purchased or otherwise acquired AAC securities
> between October 2, 2014, and August 3, 2015, inclusive. Excluded from the
> class are Defendants, directors, and officers of AAC, as well as their families
> and affiliates.

(Memo. Mot. to Certify Class, ECF No. 78 at PageID 2513.)  Later, however, "after Plaintiffs'

consideration of the Court's questions during the April 4, 2017 telephonic hearing, [Plaintiffs

request that] the Court . . . certify a class of purchasers of AAC common stock that ends on August 4, 2015 at 9:40 a.m [EST]."  (ECF No. 119 at PageID 4070.)  The Court's analysis, therefore, centers on this newly defined Class and class period.

Lead Plaintiff moves for class certification under Rule 23(b)(3), which authorizes certification where: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs also request the Court appoint Lead Plaintiff as Class Representative, and appoint law firms of Kaplan Fox & Kilsheimer LLP  and Kahn Swick & Foti, LLC  as Class Counsel, and Barrett Johnston Martin & Garrison, LLC, as Liaison Counsel for the Class.  (ECF No. 78 at PageID 2513.)

Plaintiffs argue that the prerequisites for class certification to Rule 23 are met.  (Id. at PageID 2514.)  Plaintiffs argue the numerosity requirement is satisfied because "the members of the Class likely number in the thousands and reside in many states."  (Id. at PageID 2518.) Plaintiffs argue commonality requirement is also met because "Defendants made uniform misrepresentations to the investing public through their public statements filed with the SEC . . . [and made] material misrepresentations and omissions [that] injured each Class member who acquired the stock during the Class Period . . . [rending] virtually all of the questions of law or fact at issue [as] common to the Lead Plaintiffs and all other purchasers of AAC securities during the Class Period."  (Id. at PageIDs 2520-21.)  Plaintiffs argue the typicality requirement is met because "the claims asserted by Lead Plaintiffs are typical of, if not identical to, the claims of the other Class members . . . that Defendants violated Sections 10(b) and 20(a) of the Exchange Act by making statements that misrepresented or omitted material

facts." (Id. at PageID 2522.) Plaintiffs also assert that Lead Plaintiffs will fairly and adequately protect the interests of the Class because "Lead Plaintiffs' interests are neither antagonistic to nor in conflict with the interests of the other Class members." (Id. at PageID 2523.)

Plaintiffs further contend they meet the requirements of Rule 23(b)(3). (Id. at PageID 2524.) Plaintiffs argue the predominance standard is satisfied because all Class member claims will be proved using the same evidence. (Id. at PageID 2524.) Plaintiffs also argue that the Class is entitled to a presumption of reliance under a fraud-on-the-market theory and a failure-to-disclose theory.

Under the fraud-on-the-market theory, Plaintiffs argue the facts withheld by AAC were material, which allows the Court to presume reliance on those facts. (Id. at PageID 2525.) Reliance is also presumed, Plaintiffs argue, under a fraud-on-the-market theory, because the shares are traded in an efficient market. (Id. at PageID 2526.)

Plaintiffs assert that each of the five factors used to find an efficient market are satisfied here: (1) there was 4.19% average weekly trading volume; (2) at least 36 analyst reports issued during the class period along with other news reports; (3) by trading on the New York Stock Exchange Plaintiffs "meets the spirit of this [numerous market makers] factor;" (4) Defendants filed a S-3 Registration Statement on November 10, 2015; and (5) Plaintiffs' event study analysis demonstrates a cause-and-effect relationship between the truth coming to light and a change in market price of AAC common stock. (Id. at PageIDs 2527-30.) Plaintiffs further support their argument by asserting market capitalization, bid-ask spread, institutional ownership, and lack of autocorrelation also support a finding that the market was efficient during the Class Period. (Id. at PageIDs 2530-32.) "[D]efendants

15

concede that there's an efficient market for AAC common stock in this case." (Class Cert. Hr'g Tr., ECF No. 118 at PageID 4030:13-14.)

Plaintiffs also assert the Class is entitled to a presumption of reliance under the failure-to-disclose theory. (ECF No. 78 at PageID 2533.) Under this theory, Plaintiffs contend, they need not prove reliance or materiality – the Complaint need only allege actionable omissions or misrepresentations. (Id. at PageID 2534.)

## 2. Defendants' Arguments

Defendants make four central arguments in their response. First, Defendants argue Plaintiffs' class cannot be certified because Plaintiffs are unable to meet the typicality and adequacy requirements of Rule 23(a). (Def.'s Resp., ECF No. 106 at PageID 3368.) Defendants first highlight that proposed class representative, ATRS, "purchased 114,743 shares of AAC common stock after the July 29th press release announcing the existence of the California DOJ investigation and the resulting indictment." (Id. at PageID 3369.) These post-disclosure purchases, Defendants contend, render ATRS vulnerable to defenses that are not typical of the remaining Class members, and thus ATRS is neither typical nor adequate. (Id. at PageID 3370.)

Second, Defendants contend Rule 23(b)(3)'s predominance requirement is not met because there was no price impact. (Id. at PageID 3365.) Defendants specifically contend that after the "fully corrective disclosure" on July 29, 2015, when AAC announced that there was an indictment in connection with a California DOJ investigation, there was no statistically significant price movement on July 30, 2015. (Id. at PageID 3367.) The lack of a price impact following this disclosure precludes Plaintiffs from securing a presumption of reliance. (Id.)

16

Third, Defendants argue that Plaintiffs failed to establish that damages may be calculated on a Class-wide basis under the predominance requirement of Rule 23(b)(3). (Id. at PageID 3371.) Defendants specifically take issue with Plaintiffs' expert's proposed model for determining damages, because Plaintiffs' expert does not explicitly establish how the proposed event-study model is consistent with the allegations in the case. (Id. at PageID 3371.) Defendants also argue that the event-study model proffered by Plaintiffs' expert would not establish that damages existed on July 30, 2015. (Id. at PageID 3372.)

Fourth, Defendants argue that if the Court certifies the class it should limit the class period to July 29, 2015 rather than August 3, 2015. (Id. at PageID 3374.) July 29, 2015 is the appropriate date, Defendants argue, because that is when the AAC indisputably disclosed the existence of the California DOJ investigation. (Id.) Defendants further contend "the information that was released to the market between July 30, 2015 and August 4, 2015, simply did not add any new information regarding the existence of the California DOJ investigation." (Id. at PageID 3376.)

### 3.    Plaintiffs' Response

Plaintiffs respond to Defendants' arguments by asserting first that Plaintiffs need not prove price impact at the certification stage; rather, it is Defendants' burden to present evidence of a lack of price impact. (ECF No. 108 at PageIDs 3410-11.) Moreover, Plaintiffs argue that their expert provides a rebuttal that establishes a price impact based on the AAC announcement on the indictment alone. (Id. at PageID 3413.) Plaintiffs also contend that Defendants misconstrue the Complaint's allegations: "The full extent of Defendants' Class Period misrepresentations was not related 'solely' to revealing the [existence of the] investigation, but also intentionally misleading investors about the operational risks to the

17

Company stemming from their intentional failure to disclose the investigation." (Id. at PageID 3414.) Plaintiffs argue the "[c]orrective disclosures related to those Class Period misrepresentations did not all occur on July 29, 2015 – but rather included additional, new disclosures on August 3-4, 2015." (Id.)

Plaintiffs also contend that ATRS's post-Class Period purchases do not render it atypical or inadequate because "'purchasing stock subsequent to a materially adverse disclosure, 'averaging down,' is a common technique used to decrease the average cost of an investment and which cannot be used to defeat a proposed class representative's typicality.'" (Id. at PageID 3415 (quoting In re Select Comfort Corp. Sec. Litig., 202 F.R.D. 598, 607 n.12 (D. Minn. 2001).)

### C.   Analysis

### 1.   Implied Prerequisites to Rule 23(a)

Defendant does not dispute that the proposed Class meets the implied prerequisites to Rule 23(a). The Court finds the Class is sufficiently definite to determine whether an individual is a class member, Allen v. Int'l Truck & Engine Corp., 3:07–cv–361, 2011 WL 2975543, at *5 (S .D. Ohio July 21, 2011), because class members must have acquired or purchased AAC stock during the class period. Lead Plaintiff also appears to fall within the proposed Class such that it had standing[3] to bring the Complaint. Brunet v. City of Columbus, 1 F.3d 390, 399–400 (6th Cir. 1993); Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537 (6th Cir. 2012). It allegedly suffered "losses of $591,922 as a result of

---

[3] Standing requires a showing by Plaintiffs of: (1) injury in fact; (2) causal connection between the injury and the complained of conduct; and (3) that success on the merits will likely redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

purchasing AAC Holdings' common stock traded during the Class Period at artificially inflated prices."  (ECF No. 23 at PageID 279.)

### 2. Rule 23(a) Prerequisites

#### a) Numerosity

Defendant does not dispute that the proposed Class is sufficiently numerous.  Plaintiffs assert that the Class members would "likely number in the thousands and reside in many states."  (ECF No. 78 at PageID 2518.)  The Class appears so numerous that joinder of all the members would be impracticable.

#### b) Commonality

The Sixth Circuit has stated that there need only be one question common to the class, but the answer of that question must be central to and advance the litigation.  In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation, 722 F.3d 838, 853 (6th Cir. 2013); Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).

Plaintiffs assert that the entire class shares five common questions of fact listed in Plaintiffs' Motion.   (ECF No. 78 at PageID 2521.)  Common questions in this case, as in other cases involving Section 10(b) and Rule 10b-5 allegations, include "several common questions of law and fact concerning the falsity or misleading nature of the [ ] public statements made by [AAC], the presence or absence of scienter, and the materiality of the misrepresentations, if any."  Basic Inc. v. Levinson, 485 U.S. 224 (1988).  Defendants do not oppose these asserted common questions of fact.  The Court, therefore, finds the commonality requirement is satisfied.

### c) Typicality

The claims of the representative party, Lead Plaintiff, must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). To satisfy this requirement, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). Lead Plaintiff's claims here are similar to those of other putative class members. All members allegedly bought "AAC Holdings' common stock" during the proposed class period, relying on AAC withholding material information, and suffered "losses of $591,922" when the truth came to light through a series of corrective disclosures. (ECF No. 23 at PageID 279, 281.)

Defendants contend that Lead Plaintiff is atypical because it bought AAC shares following the July 29, 2015 disclosure. (ECF No. 106 at PageID 3369.) These post-disclosure purchases, Defendants contend, render Lead Plaintiff vulnerable to defenses that are not typical of the remaining Class members, and thus Lead Plaintiff is neither typical nor adequate. (Id. at PageID 3370.) But in the Rule 10b-5 context, our sister courts find that "purchasing stock subsequent to a materially adverse disclosure, 'averaging down,' is a common technique used to decrease the average cost of an investment and which cannot [automatically] be used to defeat a proposed class representative's typicality." In re Countrywide Fin. Corp. Sec. Litig., 273 F.R.D. 586, 603 n.36 (C.D. Cal. 2009); accord In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 204 (E.D.Pa. 2008); Feder v. Electronic Data Sys. Corp., 429 F.3d 125, 138 (5th Cir. 2005); In re Sepracor Inc., 233 F.R.D. 52, 56 (D. Mass. 2005); Malone v. Microdyne Corp., 148 F.R.D. 153, 159 (E.D.Va. 1993).

### d) Adequacy

Lead Plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Defendants contend that Lead Plaintiff is inadequate for the same reason

expressed under typicality. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 543 (6th Cir. 2012) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997)) (internal quotation marks omitted). It appears that Lead Plaintiff as no conflicts of interest, and has the same interest and injury as other class members. Additionally, for the reasons stated above, an 'averaging down' strategy, alone, is not enough to render the Lead Plaintiff inadequate in a Rule 10b-5-related action. The Court therefore finds that Lead Plaintiffs are adequate representatives of the Class under Rule 23(a)(4).

### 3. Rule 23(b)(3) Requirements

The Court finds that Plaintiffs have satisfied the Rule 23(b)(3) requirements. Common questions of law and fact predominate over any question affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

#### a) Predominance

For the sake of a complete Rule 23(b)(3) analysis, the Court holds that, though not challenged by Defendants, all elements of the Rule 10b–5 claim are based on evidence that is common to the class.

#### 1. Materiality of Misstatements/Omissions

The alleged wrongdoing giving rise to the claim is uniform as to the entire class. Proving Defendants' liability will depend on the same evidence relating to the materiality of the misstatements and omissions at issue and Defendants' state of mind in making such

statements or failing to disclose certain information about the indictment or investigation.  See Amgen, 133 S.Ct. at 1195–96 (stating that "materiality is a common question for purposes of Rule 23(b)(3)" (quotation omitted)).  The Court finds this factor satisfied.

## 2. Scienter

Likewise, whether Defendants acted with scienter is a common question based on the Defendants' state of mind, not on any individualized inquiry involving class members.  The Court, therefore, finds this factor satisfied.

## 3. Connection between Misstatements/Omissions and Security Price

Also, whether a connection exists between the misstatements or omissions and the value of AAC's stock is a common question uniform to the entire class.  Accordingly, the Court finds this factor satisfied.

## 4. Reliance on Misstatements/Omissions

"Whether common questions of law or fact predominate in [Rule 10b-5] action often turns on the element of reliance."  Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804 (2011).  Courts have long recognized that without a classwide presumption of reliance in securities fraud cases, Rule 23(b)(3)'s predominance requirement "would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation."  Dukes, 131 S.Ct. at 2552 n. 6; see also Halliburton I, 563 U.S. at 810 (explaining that "requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would prevent such plaintiffs from proceeding with a class action, since individual issues would overwhelm the common ones.") (citing Basic, 485 U.S. at 242).  Accordingly, the Supreme Court has identified two avenues through which plaintiffs may invoke a rebuttable presumption of reliance: the "fraud-on-the-market" presumption, as outlined in Basic Inc. v. Levinson, and the Affiliated Ute

presumption, as set forth in <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, 153-154 (1972). Plaintiffs contend they are entitled to a presumption of reliance under both theories. Because the Court finds that Plaintiffs are entitled to a presumption of reliance under <u>Basic</u> such that the class may be certified, it is unnecessary for the Court to reach the question of whether Plaintiffs are similarly entitled to such a presumption under <u>Affiliated Ute</u>.

<u>Basic</u>'s "fraud on the market" theory provides a rebuttable presumption that because "the market price of shares traded on well-developed markets reflects all publicly available information," including any misrepresentations, "all traders who purchase stock in an efficient market are presumed to have relied on the accuracy of a company's public statements." <u>Basic</u>, 485 U.S. at 246-7; <u>Dukes</u>, 131 S.Ct. at 2552 n. 6; <u>see also</u> <u>Halliburton Co. v. Erica P. John Fund</u>, Inc., 134 S. Ct. 2398, 2404 (2014) ("<u>Halliburton II</u>") (reaffirming Basic's presumption of reliance). To invoke this presumption at the class certification stage, plaintiff must show: (1) the alleged misrepresentations were publicly known, (2) the misrepresentations were material, (3) AAC's stock traded in an efficient market, and (4) "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." <u>Halliburton I</u>, 131 S. Ct. at 2185 (quoting <u>Basic</u>, 485 U.S. at 248, n. 27); <u>Halliburton II</u>, 134 S. Ct. at 2416. However, the presumption may be rebutted where a defendant offers evidence that "severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." <u>Basic</u>, 485 U.S. at 248; <u>see</u> <u>Halliburton II</u>, 134 S. Ct. at 2415-16.

### i. Misrepresentations Publicly Known

Defendants do not substantively challenge that the alleged misrepresentations, e.g., failing to reveal the existence of the criminal investigation and intentionally misleading

investors about the operational risks to the Company stemming from their intentional failure to disclose the investigation (ECF No. 108 at PageID 3414), were publicly known. The record also establishes that there was no disclosure by AAC concerning the indictment in any public document. The Court, therefore, finds this factor satisfied.

### ii. Misrepresentations Were Material

Even though materiality is a prerequisite for invoking the presumption, the Supreme Court held that it should be left to the merits stage of the litigation because it does not bear on the predominance requirement of Rule 23(b)(3). Halliburton II, 134 S. Ct. at 2416. Accordingly, this Court does not address the materiality of the alleged misrepresentations at this time.

### iii. Efficient Market

Defendants do not dispute that the proposed Class traded in an efficient market. (Class Cert. Hr'g Tr., ECF No. 118 at PageID 4030:13-14.) Plaintiffs argue the five factors espoused in Cammer v. Bloom in determining whether a security was traded on an efficient market are present in this case (see ECF No. 78 at PageID 2527): (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. Cammer v. Bloom, 711 F.Supp. 1264, 1286-87 (D.N.J. 1989); Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 605 (S.D. Ohio 2003). The Court finds that the market in the instant case was efficient, and this factor is satisfied.

### iv. Plaintiffs Traded Stock After the Misrepresentation Occurred and Prior to Curative Disclosure

Defendants also do not dispute that Plaintiffs traded stock after the omission/misrepresentation occurred and prior to the curative disclosure. Defendants do argue, however, that Lead Plaintiff also traded stock after the July 29, 2015 disclosure. See supra Part II.E.2(c)-(d) (typicality and adequacy); (ECF No. 95 at PageID 2987). Defendant does not advance this argument as to any other Class members nor discusses whether such a transaction would render this factor unsatisfied. As proposed, the Class would limit members to those who purchased or otherwise acquired AAC securities between October 2, 2014, and August 4, 2015.

### v. Defendants' Rebuttal

"Price impact can be shown either by an increase in price following a fraudulent public statement or a decrease in price following a revelation of the fraud." Erica P. John Fund, Inc. v. Halliburton Co., 718 F.3d 423, 434 (5th Cir. 2013), vacated and remanded on other grounds by 134 S. Ct. 2398 (2014). Defendants state that there was no statistically significant price decrease on the day of or following the first July 29, 2015 disclosure, and thus there was no price impact. Plaintiffs argue, however, that the July 29, 2015 disclosure was not fully curative, and that the following partial disclosures up until August 4, 2015 fully cured the misrepresentations.

"In determining the duration of a securities fraud class based on a fraud-on-the-market theory, the Court must determine whether a curative disclosure had been made so as to render it unreasonable for an investor, or the market, to continue to be mislead by the defendants' alleged misrepresentations." In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C. 2008) (internal quotation marks omitted).

25

Courts must tread a fine line when parties dispute whether a particular release cured prior misrepresentations. While a court cannot delve into the merits, it should preliminarily evaluate when curative information was publicly announced or otherwise disseminated to the market, for the class period should end when prior misrepresentations are fully cured. Thus, a majority of courts engage in a limited review to determine when a market was cured of prior misrepresentations. Courts that have engaged in this limited review refuse to narrow the class period if there is a substantial question of fact as to whether the release had cured the market or was itself misleading.

Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 614 (S.D. Ohio 2003) (internal citations and quotation marks omitted); accord Shirk v. Fifth Third Bancorp, No. 05-CV-49, 2007 WL 1100429, at *16 (S.D. Ohio Apr. 10, 2007); In re Schering-Plough Corp./ENHANCE Sec. Litig., No. CIV.A. 8-397 DMC/JAD, 2012 WL 4482032, at *9 (D.N.J. Sept. 25, 2012); Hodges v. Akeena Solar, Inc., 274 F.R.D. 259, 271 (N.D. Cal. 2011); In re Enron Corp. Sec., 529 F. Supp. 2d 644, 712 (S.D. Tex. 2006). The Court now makes a limited review of the disclosures to determine when the misrepresentations were fully cured.

July 29, 2015 Disclosure: On July 29, 2015, AAC publicly disclosed that charges had been brought against subsidiaries of AAC and two current and three former employees, referring to the July 21, 2015 California indictment. (ECF Nos. 50 ¶ 20; 65 ¶ 124.) Defendants did not disclose that the charges included the second-degree murder and dependent adult abuse of Mr. Benefield. (ECF No. 50 ¶ 20.) On the same day, AAC also reported better than expected financial results for AAC's 2015 second quarter. (ECF Nos. 50 ¶ 21; 65 ¶ 125.)

At this juncture, the Court finds AAC's July 29th disclosure concerning the indictment was not curative, as it was tempered by a positive financial report. In short, these reports did not amount to a disclosure of information such that the causal link is severed between the

release of information claiming the full extent of the indictment and/or that AAC knew of the investigation several weeks prior to disclosing it, and the stock price drop in early August.

August Disclosures: Plaintiffs allege that "on August 1, 2015, the Company hosted an earnings conference call where Defendant Cartwright claimed that, while he was 'just now having the opportunity to review [the six page] indictment,' he 'firmly believe[d] that the California Department of Justice case is without merit.'" (ECF No. 50 ¶ 21.)

At this time, the Court finds that this disclosure fails to convey the extent of the indictment, suggests that AAC has only recently come to understand the case, and also tempers by claiming the case is without merit. The Court finds, therefore, that this disclosure falls short of curative disclosure of the misrepresentation alleged by Plaintiffs. (See ECF No. 119 at PageID 4067.)

On August 4, 2015, Bleeker Street Research published a report entitled "American Addiction Centers: Even More Undisclosed Deaths and the Start of Real Problems" revealing new facts and details about the indictment and history of wrongdoing at the AAC Affiliates. (Id.) On August 5, 2015, Forbes published an article entitled "AAC Holdings' Lawyers Knew About Criminal Investigation in 2013," reporting that "[i]n a response to questions from Forbes about when it became aware of the criminal investigation, the company said in a statement last week it learned of the grand jury investigation into the death of Gary Benefield about six weeks ago." (ECF No. 50 ¶ 23.) The article went on to state that "AAC Holdings had not disclosed the criminal investigation into Gary Benefield's death in any of its securities filings that were made with the SEC as it prepared for its IPO last year or since, until the indictment was unsealed." (Id. ¶ 24.)

At this time, the Court finds that these disclosures, specifically those made on August 5, 2015, tie together the partial disclosures and fully cure the alleged misrepresentations. It is clear from these disclosures the indictment concerns the death of a patient and whether AAC knew of the investigation but failed to properly disclose it. Following August 5, 2015, it would have been unreasonable for an investor, or the market, to continue to be misled by the defendants' alleged misrepresentations. Accordingly, upon its limited review, the Court finds the Plaintiffs' presumption of reliance is not rebutted.

### 5. Economic Loss

Defendants, citing Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), argue that Plaintiffs cannot establish predominance because Plaintiffs' expert failed to advance a methodology for calculating damages on a classwide basis in a manner that is consistent with their theory of liability. (ECF No. 98 at PageIDs 3177-3178.) Comcast requires that if Plaintiffs advance a methodology for calculating damages on a classwide basis, then they must also show that the methodology is consistent with their theory of liability. 133 S. Ct. at 1433.

The Court finds that Plaintiffs have satisfied Comcast. Specifically, Plaintiffs' expert used an event study to calculate damages on a classwide basis. (See Coffman Expert Rebuttal, ECF No. 109-4 at PageID 3606; Coffman Report, ECF No. 80-4 at PageID 2780.) The Court finds that the proffered methodology is often viewed by courts as consistent with Plaintiffs' theory of liability based on misrepresentations or omissions in securities litigation. See, e.g., Hatamian v. Advanced Micro Devices, Inc., No. 14-CV-226 YGR, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016); Willis v. Big Lots, Inc., No. 2:12-CV-604, 2017 WL 1063479, at *11 (S.D. Ohio Mar. 17, 2017); Wallace v. IntraLinks, 302 F.R.D. 310, 318

(S.D.N.Y. 2014); In re Wilmington Trust Sec. Litig., 310 F.R.D. 243, 246 (D. Del. 2015); see also In re VHS of Mich., Inc., 601 Fed.Appx. 342, 344 (6th Cir. 2015) ("Comcast applies where multiple theories of liability exist, those theories create separable anticompetitive effects, and the combined effects can result in aggregated damages. . . . Where there is no chance of aggregated damages attributable to rejected liability theories, the Supreme Court's concerns do not apply."). Accordingly, the Court finds that individual damages issues will not predominate over common issues in this case.

### 6. Loss Causation[4]

In addition to the allegedly deceptive statements and omissions and Defendants' scienter, loss causation for the putative class is also capable of proof through common evidence. Each Class member's claim for relief is based on the same corrective disclosures that allegedly caused AAC's stock value to drop. Accordingly, the Court finds this factor satisfied.

### b) Superiority

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this decision, the Court considers: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the

---

[4] "Loss causation is a familiar and distinct concept in securities law; it is not price impact." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804 (2011). "Loss causation . . . requires a plaintiff to show that the misrepresentation caused a subsequent economic loss. That has nothing to do with whether an investor relied on that misrepresentation in the first place, either directly or through the fraud-on-the-market theory." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804 (2011).

29

litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. <u>Id.</u>

Defendants do not contest Plaintiffs' assertion that a class action is superior to any other form of adjudication in the instant case. Based on the potential number of Plaintiffs in the Class, the Class members' interests in resolving the issue in one case, and the lack of any additional litigation concerning the instant case, it appears that a class action is superior to other available methods in the instant case. The Court, therefore, finds a class action is superior to any other available methods to adjudicate the claims raised here.

## 2. MOTIONS TO APPOINT CLASS COUNSEL & CERTIFY LEAD PLAINTIFF AS REPRESENTATIVES OF THE PROPOSED CLASS

Plaintiffs seek to appoint Kaplan Fox, Kahn Swick and Barrett Johnston as Class Counsel, and certify Lead Plaintiffs as representatives of the proposed Class. (ECF No. 78 at PageID 2537.)

Rule 23(g)(1)(A) sets out four factors a court must consider in appointing Class Counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs argue that each of the named attorneys "have extensive experience prosecuting securities class actions" and "have effectively used their experience to vigorously pursue the interests of all Class members, including the filing of a detailed Complaint, successfully defending the Complaint against Defendants' motion to dismiss, by pursuing an aggressive discovery plan, and by preparing this action for trial." (ECF No. 78 at PageID

2537.)  Defendants do not dispute whether Plaintiffs' motion to appoint as Class Counsel should be granted.

Pursuant to Federal Rule of Civil Procedure 23, and the reasons stated above, the Court appoints Lead Plaintiff ATRS as the Class Representative.

Accordingly, the Court GRANTS Plaintiffs' Motion to appoint Kaplan Fox, Kahn Swick and Barrett Johnston as Class Counsel and Plaintiffs' Motion to appoint Lead Plaintiff Class Representative.

## III.    CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion to Certify the Class:

> all persons and entities who purchased or otherwise acquired AAC securities between October 2, 2014, and August 4, 2015 at 9:40 a.m. (EDT).  Excluded from the class are Defendants, directors, and officers of AAC, as well as their families and affiliates.

(ECF No. 119 at PageID 4070.)

The Court also GRANTS Plaintiffs' Motion to appoint Kaplan Fox, Kahn Swick and Barrett Johnston as Class Counsel and Plaintiffs' request to appoint Lead Plaintiff as Class Representative.

**IT IS SO ORDERED**, this 14th day of July, 2017.

 /s/ Jon P. McCalla
JON P. McCALLA
 UNITED STATES DISTRICT COURT JUDGE